Opinion
KING, J.
In this case we explore the most repetitively troublesome issue in the family law field over the last 40 years, the issue of what constitutes extrinsic fraud justifying the setting aside of a judgment and marital settlement agreement in a family law action, and what constitutes intrinsic fraud and thus is insufficient to achieve this result. We analyze this issue mindful of changing times and the changing relationships between spouses, including overdue legislative recognition of such changes by eliminating the longstanding statutory mandate that the husband is the manager of the community property, and replacing it by providing effective January 1, 1975, that *1057 the parties have equal rights of management and control of the community.[1] Here, Richard G. Stevenot appeals from an order granting Pamela D. Stevenot’s motion to set aside her default entered November 2, 1981, and the interlocutory judgment of dissolution of their marriage entered January 4, 1983, based upon the trial court’s finding of extrinsic fraud. Pamela’s motion did not seek to set aside the marital settlement agreement executed by the parties, which was incorporated into the interlocutory judgment, and the court specifically refrained from acting on this issue.
Richard was a 49-year-old engineer. Pamela, 26 years old, had completed high school and was employed as a waitress. Richard filed his petition for dissolution of marriage in propria persona on August 10, 1981, alleging a five-year marriage[2] and no assets or obligations subject to disposition by the court as community or quasi-community property.
Pamela was served with the summons and petition for dissolution on August 14, 1981, and executed a written acknowledgment of receipt thereof on the same date. Her default was entered November 2, 1981, after service upon her of a copy of the request to enter default. Richard obtained a default interlocutory judgment of dissolution of marriage by declaration on January 4, 1983, pursuant to Civil Code section 4511 and California Rules of Court, rules 1241 and 1286.5. The interlocutory judgment incorporated the marital settlement agreement of the parties dated July 8, 1981, as well as two one-page addenda executed September 18, 1982, and December 16, 1982. The marital settlement agreement provided Richard would make specified cash payments to Pamela, transferred specific property to each of the parties as their separate property, made provision for payment of specified debts, included a waiver by Pamela of any interest she had in Richard’s pension plan with his employer, provided for the distribution of any tax refunds and contained the following statement: “Each party has made a full disclosure to the other of his current finances and assests [sic], and each enters into this agreement and relies thereon.” The September addendum acknowledged Pamela’s receipt of cash payments from Richard and an adjustment of the payments due under the marital settlement agreement, while the December addendum acknowledged that all payments to Pamela had been made.
On January 11, 1983, Pamela filed a motion to set aside her default and the interlocutory judgment. Attached to her motion was her supporting declaration stating that, with the exception of four months, she had lived with *1058 Richard since she was nineteen years old, and “[d]uring the entire relationship, [Richard] had always been very intimidating, bossy, and had complete control of all aspects of [their] relationship, including the finances, running the property, and ownership of property.” The declaration set forth the community assets of which Pamela was aware, and stated that in August 1981 when their relationship had deteriorated, Richard became very threatening: “He stated that he was going to go ahead and do the paperwork for the divorce, that he would give me $5,000 and some miscellaneous furniture and my vehicle, that I would not get anything more by going to court, and that there was no use going to a lawyer, since they would charge more than the value of the property I would get in any settlement.” Pamela then described threats allegedly made by Richard, and stated “[b]ecause of these threats and the dominating relationship of [Richard] over me, I was intimidated, frightened, and afraid to discuss any of this with my family.” She declared that Richard presented her with a separation agreement, which she signed and has not seen since, and a deed to their community property home. After signing the agreement and deed, she moved out. Four months later, when she was unable to “make it on her own financially,” Richard allowed her to move back into the residence. “Although we did not continue our husband and wife relationship, the intimidation and overbearing attitude . . . continued. During this period, I asked him about the divorce proceedings, and he always gave me an evasive answer.” She alleged that when she received the dissolution petition, she did not realize its legal significance as to property. She alleged she did not take action on the petition because she was in a state of fear from Richard’s threats. In December 1982 she finally talked to her family about the divorce proceedings; they advised her to get a lawyer, she did, and the motion to set aside was filed. She requested in her motion that “the default be set aside so that the issues of spousal support, property division, and attorneys’ fees could be determined.”
In response to the motion, Richard filed a declaration denying Pamela’s allegations with respect to his threatening conduct; he declared he suggested she speak to an attorney “regarding the divorce;” and he acknowledged that during the marriage he had control of the couple’s “finances and property, the reason being not that I wanted to dominate that aspect of our marriage or dominate [Pamela], but rather, because [Pamela] was totally incapable and immature in handling such matters.” He declared that he had never told Pamela not to seek the advice of an attorney; he had never prevented her from filing a response to the petition; and he did not “in any way hinder the exercise of her legal rights with respect to these proceedings or to be heard in court.” He stated that the delay in obtaining the interlocutory judgment and final judgment resulted from his inexperience, since he appeared in propria persona, and from the clerk’s office losing or otherwise misplacing his paperwork.
*1059 Pamela’s motion was heard on February 1, 1983, with both parties present in court and represented by counsel. The parties were sworn and stated that their declarations filed with the court were true and correct. The remainder of the hearing consisted of offers of proof by counsel of matters not in the declarations, and of argument.[3] Pamela’s counsel offered her testimony and that of her father and two sisters with respect to Richard’s alleged threats, his answers in response to the status of the dissolution, his furnishing dissolution papers, and the status of the dissolution proceedings. Richard’s counsel made offers of proof with respect to the status of property, its value, and discussions of the property by the parties and with respect to furnishing Pamela copies of divorce papers. The trial court, a particularly learned and knowledgeable family law judge, took a recess to carry out independent research on the legal issue of whether the facts constituted extrinsic or intrinsic fraud. Upon his return to the courtroom, the trial court gave the parties a very thoughtful and complete oral statement of decision in which he granted Pamela’s motion.[4]
*1060 As might be expected in this appeal, Richard denies any fraud and contends that if any fraud occurred, it was intrinsic fraud and the judgment should not have been set aside, while Pamela contends there was extrinsic fraud and the ruling of the trial court was correct.
For the past 40 years, no family law issue has so regularly captured the attention of the California Supreme Court as has the issue of what constitutes extrinsic and intrinsic fraud. The Courts of Appeal have regularly wrestled with this problem during the same period, and it is likely that hundreds, if not thousands, of such cases have been decided by trial courts during the same period with no appeals having been filed. In 1933, our Supreme Court noted, “The distinction between intrinsic and extrinsic fraud is quite nebulous . . . .” (Caldwell v. Taylor (1933) 218 Cal. 471, 479 [23 P.2d 758, 88 A.L.R. 1194].) More recently, one court correctly commented that, “the distinctions between extrinsic and intrinsic fraud are hopelessly blurred. Nonetheless, the California courts have remained married to the importance of the distinction whether or not and in fact it exists.” (In re Marriage of Guardino (1979) 95 Cal.App.3d 77, 89 [156 Cal.Rptr. 883].) “The viability of the extrinsic-intrinsic distinction has been undermined further by its inconsistent application. While the courts purport to rely on the extrinsic-intrinsic distinction, an examination of California decisions indicates a strong emphasis on the presence or absence of equitable considerations in granting relief. When a party’s entitlement to equitable relief de *1061 pends upon the court’s classification of the fraud involved, such inconsistency provides little indication of the likelihood of success under the particular factual circumstances.” (Comment, Seeking More Equitable Relief from Fraudulent Judgments-. Abolishing the Extrinsic-Intrinsic Distinction (1981) 12 Pacific L.J. 1013-1014.) It would appear to some that “the courts are more influenced by the presence or absence of equitable factors than by the type of fraud committed.” (Id., at p. 1029.)
Considering the attention this subject has been given by appellate court opinions in California, and the frequency with which it arises, the trial bench and the family law bar are entitled to be guided by more definitive rules in determining whether extrinsic fraud exists to set aside final judgments incorporating marital settlement agreements. In order to provide more guidance, and for the purpose of reaching a decision in the instant case, it is appropriate to first review the decisions of our Supreme Court on this subject.
The primary architect of California’s law on the extrinsic-intrinsic fraud issue in family law cases has been one of its judicial superstars, Justice Roger Traynor. Over 40 years ago, Justice Traynor wrote, “The final judgment of a court having jurisdiction over persons and subject matter can be attacked in equity after the time for appeal or other direct attack has expired only if the alleged fraud or mistake is extrinsic rather than intrinsic [citations], Fraud or mistake is extrinsic when it deprives the unsuccessful party of an opportunity to present his case to the court [citations]. If an unsuccessful party to an action has been kept in ignorance thereof [citations] or has been prevented from fully participating therein [citation], there has been no true adversary proceeding, and the judgment is open to attack at any time. A party who has been given proper notice of an action, however, and who has not been prevented from full participation therein, has had an opportunity to present his case to the court and to protect himself from any fraud attempted by his adversary. [Citations.] Fraud perpetrated under such circumstances is intrinsic, ...” (Westphal v. Westphal (1942) 20 Cal. 2d 393, 397 [126 P.2d 105], citing in part to United States v. Throckmorton (1878) 98 U.S. 61 [25 L.Ed. 93], and Caldwell v. Taylor (1933) 218 Cal. 471 [23 P.2d 758, 88 A.L.R. 1194].)
Six years later Justice Traynor pointed out, “[t]he terms ‘intrinsic’ and ‘extrinsic’ fraud or mistake ... do not constitute, however, a simple and infallible formula . . . [Citations.] It is necessary to examine the facts in the light of the policy that a party who failed to assemble all his evidence at the trial should not be privileged to relitigate a case, as well as the policy permitting a party to seek relief from a judgment entered in a proceeding in which he was deprived of a fair opportunity fully to present his case, [¶] *1062 The latter policy applies when a party’s adversary, in violation of a duty arising from a trust or confidential relation, has concealed from him facts essential to the protection of his rights, even though such facts concerned issues involved in the case in which the judgment was entered. . . . [¶] The same principle also applies in the cases concerning equitable relief from judgments approving and adopting property settlement agreements . . . .” (Jorgensen v. Jorgensen (1948) 32 Cal.2d 13, 19-20 [193 P.2d 728].) In Jorgensen, Justice Tray nor recognized that the public policy underlying the principle of res judicata, that there should be an end to litigation when a valid judgment has become final, must be balanced against the public policy that a party should not be deprived of a fair adversary proceeding in which to present fully his or her case. (At p. 18.)
In Jorgensen, the parties, each represented by counsel, entered into a marital settlement agreement. Mrs. Jorgensen later moved to set aside a default interlocutory judgment incorporating the marital settlement agreement, contending certain assets listed therein as her husband’s separate property were in fact community property, and contending extrinsic fraud had occurred because she and her attorney had relied on the husband’s representations. Justice Traynor explained that the husband, as the statutory manager of community property under then Civil Code sections 172, 173, and 158, occupied a position of trust and had a fiduciary duty to account to his wife for the community property when the parties were negotiating a property settlement agreement, and further pointed out that when the wife, in fact, exercises management or control over community assets, the same rule applies to her. A breach of the fiduciary duty occurs if one party deprives the other of the opportunity to protect his or her rights in concealed assets. (32 Cal.2d at p. 21.) The court in Jorgensen held that any fraud by virtue of husband’s representation was intrinsic rather than extrinsic fraud, and therefore was insufficient to set aside the marital settlement agreement, since a husband, although statutorily the manager of the community property, is entitled at the time of divorce or separation to take a position favorable to his own interests by claiming as his separate property assets which a court might hold to be community property. Confronted with the assertion by one party that assets are separate property, the other party must ascertain her own position as to the character of the property and, if necessary, investigate the facts. A failure to carry out such an investigation results, at best, in intrinsic fraud which is insufficient to set aside the judgment and the marital settlement agreement.
Nine years later, our Supreme Court again examined factual circumstances to determine whether extrinsic fraud had occurred. A wife, prior to the execution of a marital settlement agreement and while represented by counsel, began an investigation of the property of the parties, but did not pursue *1063 it, being satisfied with the marital settlement agreement. The court, citing Jorgensen, held that the husband owed the wife no duty to force her to investigate property when she stated she was satisfied with the marital settlement agreement prepared by her own attorney. Because the parties dealt with each other at arms’ length, or at least the husband gave the wife every opportunity to deal at arms’ length when the marital settlement agreement was executed, the law recognized that the interests of the parties were adverse, and neither owed the duty of disclosure to the other which would have existed if the relationship had remained a confidential one. (Collins v. Collins (1957) 48 Cal.2d 325 [309 P.2d 420].)
Our Supreme Court’s next venture into this field occurred four years later, when a wife sought rescission of a marital settlement agreement containing an inequitable property division on the basis of her deceased husband’s alleged fraud prior to and at the time of its execution. Citing Jorgensen, a divided court ruled that the agreement must be set aside, holding that when the husband represented he would give her full information and enter into a fair and equitable property settlement agreement in return for her discontinuing adversary proceedings, this constituted extrinsic fraud, because the wife had not terminated the fiduciary relationship nor dealt with the husband at arms’ length, and his duty as a trustee with management and control of the community imposed upon him a duty to account to his wife for community property. (Vai v. Bank of America (1961) 56 Cal.2d 329 [15 Cal.Rptr. 71, 364 P.2d 247].) The court distinguished the fiduciary relationship arising by virtue of a husband’s management and control of community property from the confidential relationship which is presumed to exist between spouses. The latter, and obligations arising out of it, are dependent upon the existence of confidence and trust, but the fiduciary relationship as to the wife’s interest in community property continues as long as the husband has control of that property, notwithstanding the absence of confidence and trust and the consequent termination of the confidential relationship. (Id., at pp. 337-338.)
The majority opinion in Vai has resulted in substantial confusion over the distinction between extrinsic and intrinsic fraud in family law cases. Perhaps the majority was influenced by the fact that Mrs. Vai’s equitable proceeding was brought against the executor of her deceased husband’s estate. In every other case, absent egregious conduct such as concealment of the existence of community assets or concealment of the existence of the proceedings, when a party requesting equitable relief has been represented by counsel in the proceedings, any fraud has been found to be intrinsic, rather than extrinsic, and insufficient to set aside a judgment and marital settlement agreement. It is arguable that the holding in Vai should be limited to its own facts and would appear to have been impliedly overruled by later Supreme Court *1064 decisions such as In re Marriage of Connolly (1979) 23 Cal.3d 590 [153 Cal.Rptr. 423, 591 P.2d 911], and Miller v. Bechtel Corp. (1983) 33 Cal.3d 868 [191 Cal.Rptr. 619, 663 P.2d 177].
It is highly significant that Justice Traynor, the author of the court’s opinion in Jorgensen, and of the later landmark decision in Kulchar v. Kulchar (1969) 1 Cal.3d 467 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368], wrote a lengthy dissent in Vai. He would have upheld the trial judge’s finding that the husband was not a fiduciary based upon substantial evidence. He pointed out that the wife was represented by counsel of her own choice at all times and her counsel had drafted the agreement which could be inferred to be fair and equitable. Thus, the spouses in negotiating the property settlement agreement could deal with each other at arms’ length, with the Jorgensen exception that each must reveal information peculiarly within his or her own knowledge as to the existence of community property. (Vai, supra, 56 Cal.2d at pp. 349-350.) He also referred to the holding in Collins that “ ‘when the parties to a marriage are negotiating a property settlement agreement with recognition that their interests are adverse and are dealing at arm’s length, neither spouse owes to the other the duty of disclosure which he or she would owe if their relation remained in fact a confidential one.’” (Vai, supra, at p. 351.) Furthermore, “‘[a] husband at the time of divorce or separation is entitled to take a position favorable to his own interest in claiming as his separate property assets that a court might hold to be community property. Confronted with the assertion by the husband that certain assets are his separate property the wife must take her own position and if necessary investigate the facts.’” (Ibid.)
Four years after Vai, the court held that a marital settlement agreement executed by a party represented by counsel which, unknown to them, differed from a stipulated settlement in open court, must be set aside as extrinsic rather than intrinsic fraud. (See Lopez v. Lopez (1965) 63 Cal.2d 735 [48 Cal.Rptr. 136, 408 P.2d].)
Without question, the landmark case in this area is Justice Traynor’s opinion in Kulchar v. Kulchar, supra, 1 Cal.3d 467, holding that the power to set aside or modify a valid final judgment can only be exercised when the circumstances are sufficient to overcome the strong policy favoring the finality of judgments; that is, only in exceptional circumstances should the consequences of res judicata be denied. (At p. 470.)
The court defined extrinsic fraud as arising “when a party is denied a fair adversary hearing because he had been ‘deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.’ [Citation.]” The court also noted that the *1065 right to such relief has been extended to cases involving extrinsic mistake such as when a party becomes incompetent. (Kulchar, supra, 1 Cal.3d at p. 471.) Justice Traynor went on to point out, “Relief is denied, however, if a party has been given notice of an action and has not been prevented from participating therein. He has had an opportunity to present his case to the court and to protect himself from mistake or from any fraud attempted by his adversary. [Citations.] Moreover, a mutual mistake that might be sufficient to set aside a contract is not sufficient to set aside a final judgment. The principles of res judicata demand that the parties present their entire case in one proceeding. . . . [Citation.] Courts deny relief, therefore, when the fraud or mistake is ‘intrinsic’; that is, when it ‘goes to the merits of the prior proceedings, which should have been guarded against by the plaintiff at that time.’ [Citations.] [¶] Relief is also denied when the complaining party has contributed to the fraud or mistake giving rise to the judgment thus obtained [citation] ‘If the complainant was guilty of negligence in permitting the fraud to be practiced or the mistake to occur equity will deny relief.’ [Citation.]” (Id., at pp. 472-473.) Thus, in Kulchar, the court refused to set aside a stipulated judgment where a potential tax obligation had been overlooked, since any fraud or mistake was intrinsic because of a failure to fully investigate.
In the past ten years our Supreme Court has considered the issue of extrinsic and intrinsic fraud in four family law cases, all of which also involved settlement agreements or division of property prior to the 1975 statutory change giving the husband and wife equal management and control over community assets. Where the trial court found a husband had breached his fiduciary duty by failing to disclose facts as to the value, nature and extent of community property, the court, citing Vai v. Bank of America, supra, 56 Cal.2d at pp. 329, 337, 342-343, reiterated that a spouse with management and control of community property has a fiduciary duty to disclose the existence of community assets and material facts affecting their value while negotiating a property settlement agreement, and this duty is not terminated by commencement of a dissolution proceeding or by the other party’s retention of an attorney. However, the court also reiterated, under Jorgensen, that the managing spouse must be permitted to protect his own interests and assume a position adverse to the other, particularly when the other is represented by counsel. “Further, when a spouse, represented by independent counsel, determines to forego a suggested investigation and to accept a proposed settlement, that spouse may not later avoid the agreement unless there has been a misrepresentation or concealment of material facts. [Fn. omitted.] Under such circumstances, the spouse proposing the agreement is under no duty to compel the other to investigate, and the accepting spouse’s decision, though ill-advised, is binding, [¶] Finally, during negotiation to settle marital property rights, fairness dictates the man *1066 aging spouse be under no duty to evaluate the marital assets. And if the managing spouse does assert an opinion of value, he or she must be able to do so without warranty. Valuation, like designation of property as being either community or separate, is an issue on which reasonable views often differ, and in the absence of concealment of assets—or facts materially affecting their value—a property settlement agreement may not later be set aside solely on the basis of the managing spouse’s inaccurate opinion of value or on his or her refusal to have rendered such opinion.” (Boeseke v. Boeseke (1974) 10 Cal.3d 844, 850 [112 Cal.Rptr. 401, 519 P.2d 161].)
Five years ago, in In re Marriage of Connolly, supra, 23 Cal.3d 590, our Supreme Court, in a decision which was a substantial departure from prior decisions, held a husband had no fiduciary obligation to inform the wife of facts affecting the value of community property stock in a company of which he was a director where the information would have been readily ascertainable by the wife or her attorney upon reasonable inquiry. The court found that the wife made a tactical decision, as in Boeseke, not to ascertain the complete status of the stock or to investigate it. The court rejected her claim that her husband owed her a fiduciary duty arising from the marital relationship, finding that from the filing of the petition for dissolution of marriage her relationship with her husband was an adversary one and any obligation or trust between them was terminated. The court further stated, citing Boeseke, Collins, and Jorgensen, “We have repeatedly held that parties may elect to deal with each other at arms’ length and when they do so any fiduciary obligation otherwise owing is thereby terminated.” (Connolly, supra, at p. 600.) The court did not overrule its decision in Vai v. Bank of America, supra, 56 Cal.2d 329, but distinguished it on the basis that the wife there had discontinued the adversary proceeding at the request of the husband who had told her she would not have to pursue legal remedies in order to obtain a reasonable division of the property. Connolly casts considerable doubt upon Court of Appeal decisions reached prior to the 1975 statutory changes of Civil Code sections 5125 and 5127.
More recently one of the most clear cut examples of extrinsic fraud was reviewed by our Supreme Court in In re Marriage of Park (1980) 27 Cal. 3d 337 [165 Cal.Rptr. 792, 612 P.2d 882]. The court held the failure of the husband and his attorney to disclose to the trial court that his wife’s failure to appear at trial was because she had been involuntarily deported during the course of the litigation was extrinsic fraud requiring that the judgment be set aside. Unfortunately, in dictum, repeating extremely broad language in several Court of Appeal opinions involving pre-1975 property disputes, the opinion stated: “[t]he grounds for such equitable relief are commonly stated as being extrinsic fraud or mistake. However, those terms are given a broad meaning and tend to encompass almost any set of extrinsic circum *1067 stances which deprive a party of a fair adversary hearing. It does not seem to matter if the particular circumstances qualify as fraudulent or mistaken in the strict sense. [Citations.]” (Id., at p. 342.) This language, which could be construed in a way which would permit every default judgment to be set aside, is only a dictum.
Finally, in a single month last year, our Supreme Court last dealt with this issue in two separate cases. In the first case, Miller v. Bechtel Corp., supra, 33 Cal.3d 868, the wife filed an equitable action to set aside a marital settlement agreement, contending her former husband had misrepresented the value of community property stock in the corporation which employed him. She claimed that her husband had a fiduciary duty under Vai to provide her with full and correct information about the value of the stock. The court rejected this, but held that even if it were correct, when she became aware of facts to put a reasonably prudent person on inquiry as to the value of the stock, she had a duty to investigate and would be charged with the knowledge of what the investigation would have revealed. Given California’s policy of liberal discovery, Miller would appear to provide that when the existence of an asset is disclosed, the other party has the duty to investigate to ascertain its true character and value, and any failure to do so would obviate a finding of extrinsic fraud. The court further held that the fact the wife was mistaken as to the law and the facts was not enough to require relief if she could reasonably have discovered the mistakes, and thus, there was no extrinsic fraud.
In the second case, In re Marriage of Modnick (1983) 33 Cal.3d 897 [191 Cal.Rptr. 629, 663 P.2d 187], the court held that the fiduciary duty to disclose the existence of community assets doesn’t terminate with the date of separation or the filing of a petition for dissolution, citing Boeseke and Vai, but continues until the community property is divided. In Modnick there was not only a nondisclosure but an active concealment of a community bank account, and this was clearly extrinsic fraud. The court addressed what equitable defenses might be available and, citing Park, said that whether laches should bar the moving party from obtaining equitable relief required a weighing of the reasonableness of the moving party in not filing the motion to vacate earlier as against the extent of prejudice to the opposing party, and that these two factors are interrelated in that the greater the prejudice, the more timely the relief must be sought. (33 Cal.3d at pp. 908-909.)
Having reviewed our Supreme Court’s decisions in family law cases involving extrinsic and intrinsic fraud over the past 20 years, we note that the instant case must be distinguished from them for several reasons. First and foremost, the duty between spouses arising from statutory authority to manage and control community property was significantly changed, effective *1068 January 1, 1975, by amendments to Civil Code sections 5125 and 5127. Prior to that date the statute placed upon the husband the authority to manage and control community property. The amendments conferred equal management and control rights on the husband and wife, and changed the fiduciary duty to one of good faith. The instant case, unlike any prior decision, is one where both parties represented themselves in their dealings with each other. Finally, none of our Supreme Court’s decisions involved a case where the moving party sought only to set aside a judgment of dissolution incorporating a marital settlement agreement, alleging extrinsic fraud, but did not seek to set aside the marital settlement agreement. This is significant, since setting aside of the judgment only nullifies the court’s approval of the property settlement agreement, and does not vacate the agreement itself. (See In re Marriage of Testa (1983) 149 Cal.App.3d 319 [196 Cal.Rptr. 780]; Olson v. Olson (1957) 148 Cal.App.2d 479 [306 P.2d 1036].)
Additionally, all of the foregoing Supreme Court cases involved property disputes arising when the husband, by statute, was the manager of the community property and was charged with a fiduciary duty to the wife. The Legislature, in amending Civil Code sections 5125 and 5127 to give each spouse equal right of management and control, imposed a lesser duty of good faith in the management and control of community property.
We now summarize our view of the present state of the law by which extrinsic fraud is an equitable basis for setting aside judgments and marital settlement agreements in family law cases, considering the foregoing holdings of our Supreme Court and the statutory amendments to Civil Code sections 5125 and 5127.

General Rule

After relief is no longer available under Code of Civil Procedure section 473 for mistake, inadvertance, surprise or excusable neglect, an otherwise valid and final judgment may only be set aside if it has been obtained through extrinsic, not intrinsic, fraud.

Extrinsic Fraud

Fraud is extrinsic where the defrauded party was deprived of the opportunity to present his or her claim or defense to the court, that is, where he or she was kept in ignorance or in some other manner, other than from his or her own conduct, fraudulently prevented from fully participating in the proceeding. If a spouse discontinues adversary proceedings because of the specific representation of the other party and his or her counsel that *1069 the spouse will not have to pursue legal remedies to obtain an equal division of the community property, and an equal division does not take place, extrinsic fraud may be found to have occurred.
Extrinsic fraud is more likely to be found to exist where a party who is not represented by counsel is persuaded to enter into an inequitable agreement by the other party and his or her counsel.
The following acts constitute extrinsic fraud:
Concealment by one party of the existence of a community asset, or prevention of participation in the proceeding by the other party, including a failure to disclose to the court the inability of the other party to participate.
Failure to give notice of the action to the other party, or proceeding to obtain a judgment without the knowledge of the other party, while reconciled with him or her.
Convincing the other party not to obtain counsel because the matter is not going to proceed.
Completion of the dissolution after having represented to the other party that it would not proceed without further notice.
Fairness dictates that the managing spouse has no duty to evaluate assets and may take a position favorable to himself or herself as to the character of assets, and this is done without any warranty, either as to valuation or claims of separate property character, because these are issues on which reasonable minds may differ and an inaccurate opinion or a failure to give any opinion cannot be extrinsic fraud.

Intrinsic Fraud

Any fraud is intrinsic if a party has been given notice of the action and has not been prevented from participating therein, that is, if he or she had the opportunity to present his or her case and to protect himself or herself from any mistake or fraud of his or her adversary, but unreasonably neglected to do so.
When a claim of fraud goes to an issue involving the merits of the prior proceeding which the moving party should have guarded against at that time, or if the moving party was guilty of negligence in failing to prevent the fraud or mistake or in contributing thereto, or failed to take advantage of liberal discovery policies to fully investigate his or her claim, any fraud is intrinsic fraud. A mutual mistake which would be sufficient to *1070 erwise set aside a contract is not sufficient to set aside a valid judgment incorporating a marital settlement agreement. Even though a party is mistaken as to the law and the facts, this is an insufficient basis to set aside a valid judgment incorporating a marital settlement agreement, if the party reasonably could have discovered the mistakes.
When a party was represented by counsel, absent concealment, any fraud will usually be intrinsic. After separation, each party can take a position favorable to himself or herself as to the character and valuation of assets, and any failure of the other party to investigate the facts will render any fraud intrinsic rather than extrinsic.

Duty

Spouses no longer have a fiduciary duty to each other; however, they do have a duty to deal with the other in good faith with regard to the management and control of community property. This requires the disclosure of all community assets, but not their valuation unless the valuation or factors affecting the valuation are peculiarly within the knowledge of one spouse, and reasonable inquiry and use of discovery proceedings by the other spouse would fail to disclose them. Prior to the date of separation or the filing of a petition for dissolution, whichever occurs first, there exists a confidential relationship which imposes trust and confidence between spouses. However, upon separation or the filing of a petition for dissolution, the confidential relationship ends and the parties deal with each other at arms’ length. Thereafter, as to community property, except for concealment of a community asset or nondisclosure of information as to value peculiarly within the knowledge of one spouse, both spouses may take positions favorable to themselves as to separate or community character of property and its valuation, and representations by one to the other in this regard are made without warranty. Once spouses negotiate at arms’ length, or in an adversary manner, neither owes the duty to the other which would be owed if the parties had a confidential relationship. The duty to disclose the existence of community assets continues until there has been a division of all such assets.

Public Policy

Two conflicting public policies come into play, the policy of giving each litigant the opportunity to have his or her day in court, and the policy of finality of judgments and an end to litigation. The Legislature has determined that during the time frame provided by Code of Civil Procedure section 473 there is a strong public policy in favor of allowing litigants their day in court. Thus, by a lesser showing than extrinsic fraud (mistake, in *1071 advertance, surprise, or excusable neglect) public policy favors setting aside judgments under section 473. Once relief is no longer available under section 473, the public policy in favor of finality of judgments predominates, and the power to set aside valid final judgments and marital settlement agreements incorporated therein should be exercised only when exceptional circumstances require that the consequences of res judicata be denied. Thus, during the period when relief under section 473 is available, there is a strong public policy in favor of granting relief and allowing the requesting party his or her day in court. Beyond this period there is a strong public policy in favor of the finality of judgments and only in exceptional circumstances should relief be granted.

Marital Settlement Agreements

Marital settlement agreements, once incorporated into a judgment, are no longer mere contracts and a showing of extrinsic fraud is required to set them aside. Thus, they become a hybrid, more like a judgment than a contract, and contract defenses such as mutual mistake are insufficient to set them aside. For the public policy reasons discussed above, a lesser showing of extrinsic fraud should be required to set aside a marital settlement agreement incorporated into a judgment being set aside pursuant to Code of Civil Procedure section 473, while a strong showing of extrinsic fraud is required to set aside a marital settlement agreement once relief is unavailable under section 473.

Equitable Considerations

To set aside a judgment incorporating a marital settlement agreement on the ground of extrinsic fraud, the moving party must demonstrate that he or she has a meritorious case, that he or she has a satisfactory excuse for not presenting a defense to the original action and that he or she exercised diligence in seeking to set aside the default once the fraud had been discovered. Such a motion must not be granted if the moving party is guilty of laches or inexcusable neglect, and the court must weigh the reasonableness of the conduct of the moving party in light of the extent of the prejudice to the responding party. The burden is on the moving party, and the greater the prejudice to the responding party, the greater the burden on the moving party. The greater the prejudice to the responding party, the more likely it is that the court will determine that equitable defenses such as laches or estoppel apply to the request to vacate a valid judgment.
The foregoing completes our summary of the present State of California law on extrinsic fraud in family law cases; however, we must also address an issue not previously decided by our Supreme Court. As previously in *1072 dicated, our Supreme Court decisions involved only cases where a request was made to vacate both the judgment and the incorporated marital settlement agreement of the parties. Here the motion was directed solely to the judgment. The trial court recognized this distinction and specified that since the moving party had not moved to set aside the marital settlement agreement, that issue was not being considered, implying that if a later motion to set aside the agreement were not granted, the court’s action in granting the motion to set aside the judgment would have no meaning.
Where a moving party requests that a judgment incorporating a marital settlement agreement be set aside so that issues governed by the marital settlement agreement can be reopened, it makes no sense to vacate the judgment if the marital settlement agreement cannot be set aside. Denial of a subsequent motion to vacate the marital settlement agreement would create a ludicrous situation where the interlocutory judgment approving the marital settlement agreement has been set aside, but the parties remain bound by the marital settlement agreement. Under these circumstances, in the interest of judicial economy, and because a marital settlement agreement is no longer merely a contract once incorporated into a valid final judgment, we hold that motions to set aside valid judgments incorporating marital settlement agreements must also include a motion to set aside the marital settlement agreement of the parties. This will create no additional burden on either counsel or the trial courts for in almost all cases the facts upon which both requests are made will be identical. Separate hearings would be wasteful. Thus, if a motion to set aside the marital settlement agreement is denied, the motion to set aside the judgment should also be denied, since the moving party would be unable to demonstrate how he or she could achieve a more favorable result.
Having summarized the current status of California law on extrinsic fraud in family law cases, we turn again to the instant case. Pamela acknowledges she was validly served with a summons which include a warning her default would be entered if she failed to file a response within 30 days.[5]
Despite the receipt of this warning, and with no counterdeclaration disputing Richard’s contention that he never did or said anything which would *1073 cause her to think he did not intend to proceed, Pamela did nothing. Six weeks later she received a copy of a request to the clerk of the court to enter her default. Again she did nothing. In September and December of 1982 she executed additional addenda to the marital settlement agreement acknowledging receipt of Richard’s payments as called for by the agreement and acknowledging that he had fully complied with the agreement.
Once Pamela received notice that her default had been entered, she had six months to act to have the default set aside under the very liberal standards contained in Code of Civil Procedure section 473, which gives the trial court much broader power to vacate a valid judgment than the power to set aside a judgment thereafter under equitable powers if extrinsic fraud has occurred. (See Karlslyst v. Frazier (1931) 213 Cal. 377 [2 P.2d 362]; Weitz v. Yankosky (1966) 63 Cal.2d 849 [48 Cal.Rptr. 620, 409 P.2d 700].)
Pamela did nothing until she had received all of the fruits of the agreement she had entered into with Richard, when, 16 months after service upon her of the summons and petition, she filed her motion. She contends that her failure to proceed was based upon Richard’s intimidation, but she acknowledges that she lived separate and apart from him for four months immediately after service of process and did nothing to consult with her family or with an attorney about her rights during that time. Additionally, despite her allegations of intimidation, she returned to live in his home for financial reasons for over a year, although not in a husband-wife relationship. Her claim of intimidation, under these circumstances, is extremely doubtful.[6]
Under the circumstances of this case, having been served with a proper summons and petition for dissolution, not having been misled to believe the action would not proceed, and finally receiving notice of an entry of her default, Pamela has made no showing why she did not seek legal advice at a much earlier time than a year and a half after the entry of her default. Under these circumstances, as a matter of law, her conduct cannot be found *1074 to be reasonable. (See Wilson v. Wilson (1942) 55 Cal.App.2d 421 [130 P.2d 782].) She had a duty to exercise reasonable diligence to obtain legal advice and she totally failed to fulfill that duty. The basis of the trial court’s ruling was that Pamela did not have full knowledge of the marital proceedings and may have been misled. From our summary of the law it is clear any misleading did not constitute extrinsic fraud. Any lack of knowledge of her rights in the proceeding resulted from her own lack of diligence in consulting an attorney. The parties here, both acting without representation by counsel, were representing themselves and dealing with each other at arms’ length on an adversary basis, thus any fraud which occurred was intrinsic, rather than extrinsic, and not a basis for setting aside the default or the interlocutory judgment of dissolution.[7] Nothing, other than her own lack of diligence, prevented Pamela from participating in the action and any fraud was intrinsic. (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, §§ 184, 185, 186, pp. 3752-3757.) A party who seeks to set aside a default judgment pursuant to the court’s equity power must make a substantially stronger showing of the excusable nature of his or her neglect than is necessary to obtain relief under Code of Civil Procedure section 473. (See Carroll v. Abbott Laboratories, Inc. (1982) 32 Cal.3d 892, 901 fn. 8 [187 Cal.Rptr. 592, 654 P.2d 775].)
Applying all the foregoing principles to the present case, Richard’s conduct did not amount to extrinsic fraud. There is no evidence or claim that he concealed the existence of community assets. (See, e.g., In re Marriage of Modnick, supra, 33 Cal.3d at p. 907; Jorgensen v. Jorgensen, supra, 32 Cal.2d at pp. 13, 21-22.) Should undisclosed assets be discovered, Pamela can bring an independent action to determine her community interest, if any. (flenn v. Henn (1980) 26 Cal.3d 323, 332 [161 Cal.Rptr. 502, 605 P.2d 10].) The trial court found she was not kept in ignorance of *1075 the proceedings. (Cf. In re Marriage of Park (1980) 27 Cal.3d 337, 340-342 [165 Cal.Rptr. 792, 612 P.2d 882].) Furthermore, as Richard pointed out in his declaration, Pamela made no contention in her declaration that he ever said or did anything “which would tend to mislead her into thinking that [he] did not intend to proceed.” The declarations of the parties do not disclose any breach of Richard’s duty to disclose the existence of assets or the legal proceedings. Rather, the record reveals that Richard and Pamela discussed the disposition of their property, spousal support, and the legal proceedings; that they signed a marital settlement agreement; that 10 months after her default was entered, the marital settlement agreement was modified to acknowledge full payment of an obligation owed by Richard to her under the original agreement, partial payment of another, and modification of the support provision; that the marital settlement agreement was subsequently modified on December 16, 1982, acknowledging full payment of all obligations owed by Richard to Pamela under the agreement; that Pamela never consulted an attorney or attempted to defend the action because she felt intimidated by Richard and did not believe she could gain anything by appearing; that she waited over 16 months from the time she acknowledged receipt of the summons and petition before she consulted an attorney; and that she sought no relief until over a year after her default had been entered.
A motion to vacate a judgment should not be granted where it is shown that the party requesting equitable relief has been guilty of inexcusable neglect. (In re Marriage of Park, supra, 27 Cal.3d at p. 345.) While we must look to the extent of prejudice to the opposing party and to the reasonableness of the moving party in not filing the motion to vacate earlier, “[w]e have, however, found no case which permits the setting aside of a judgment in spite of inexcusable neglect, simply because the other side has not been prejudiced. [Citations.]” (Carroll v. Abbott Laboratories, Inc., supra, 32 Cal.3d at p. 900.) In fact, since Richard fully complied with his obligations under the marital settlement agreement, setting aside the judgment would clearly prejudice him. “[T]he greater the prejudice, the more timely must the relief be sought.” (McCreadie v. Arques (1967) 248 Cal.App.2d 39, 47 [56 Cal.Rptr. 188].)
In sum, we conclude that the record does not disclose that Pamela was either deliberately kept in ignorance of the proceeding or fraudulently prevented by Richard from presenting her claims. (In re Marriage of Mod-nick, supra, 33 Cal.3d at p. 905.) Any failure was due to her own failure to act diligently. Absent extrinsic fraud, it was error to set aside the default and interlocutory judgment of dissolution of marriage. As Justice Traynor stated, “Relief is denied, however, if a party has been given notice of an action and has not been prevented from participating therein. He has had an opportunity to present his case to the court and to protect himself from *1076 mistake or from any fraud attempted by.his adversary.” (Kulchar v. Kulchar, supra, 1 Cal.3d at p. 472.) Patricia had her opportunity and failed to exercise diligence and take advantage of it.
The order after hearing is reversed.
Low, P. J., and Haning, J., concurred.
Respondent’s petition for a hearing by the Supreme Court was denied June 20, 1984. Bird, C. J., was of the opinion that the petition should be granted.

See Civil Code sections 5125, 5127.

The parties were married three years. Richard’s mathematical error apparently resulted from the fact that the parties had lived together for two years prior to their marriage.

Judges assigned the hearing of domestic relations law and motion calendars in busy metropolitan courts must hear and decide a staggering number of cases while conducting the calendar in such a way that the parties and their counsel have a full and fair hearing. To accomplish this nearly impossible task, trial judges must adopt processes which expedite the hearing of motions and orders to show cause in domestic relations cases, one of the most important and sensitive tasks a judge faces. (See In re Marriage of Brantner (1977) 67 Cal.App.3d 416, 422 [136 Cal.Rptr. 635].)
Although trial judges, in the sound exercise of their discretion, may determine motions or orders to show cause (except for contempt) upon declarations alone and refuse to permit oral testimony pursuant to Reifler v. Superior Court (1974) 39 Cal.App.3d 479 [114 Cal.Rptr. 356], we believe a preferable procedure is that which the trial judge utilized here. Having fully reviewed the moving and responding papers prior to the hearing, Judge Edwards allowed counsel to make offers of proof of matters not in the declarations, made inquiries of the parties and counsel as necessary to gain information he needed to make his decision, and permitted counsel to argue their positions.
We fully approve this procedure because it expedites the hearing of a heavy domestic relations calendar, provides for a more pleasant, less formal, nonadversary atmosphere, and sets a tone much more likely to enable future settlement of litigation. Additionally, without expending the precious time which would be consumed by a more traditional question and answer type of heated adversary hearing, it permits the trial judge, the only one in the courtroom who knows what information in addition to the declarations is required to reach a decision, to quickly obtain information by inquiries to the parties and their counsel.

The court stated:
“I am going to grant the motion to set aside the default and the interlocutory decree. I am not ruling on the validity of the marital settlement agreement, but I think that the marital settlement agreement will be litigated at some point, and the result of that may be in fact what the current—that is, the state of affairs was before this proceeding started .... But what I am saying is that based on the facts before me, I think there should be a day in court to test that out. And so what I am doing is setting aside the default, setting aside the interlocutory decree, and I am giving you 15 days on behalf of your client to file a response in this case, and the matter will proceed thereafter as a normal dissolution .... I, however, have found that the way the proceedings went, it is sufficient evidence for me to believe that Mrs. Stevenot did not have full knowledge of the marital proceedings. Nothing I say has anything to do with her knowledge of what the content of the marital settlement agreement was because I really don’t think that I am focusing upon that. I am focusing on the process of the dissolution, that she did not have full knowledge of those proceedings and may well *1060 have been misled in understanding what those proceedings were, and I find she was misled to a sufficient extent for me to find that equitable relief will lie in this case.
“I find she did not take action in this proceeding to answer and to respond, that is, because she did not believe that there was anything that she could do, and that in fact she believed there were either no rights to protect or no assets she could gain by taking legal action. That is sufficient based on my reading of Adkins, Brennan, and the case of In re Marriage of Coffee [sic] at 63 Cal.App.3d 139, just cited in Markey for the Court to support a finding of extrinsic fraud, grant the equitable relief, find that no laches existed because there was no reason for Mrs. Stevenot to take action until she learned that in fact she had rights and it is, to quote the language of the Jorgenson case, which is at 32 Cal.2d 13, 1948, ‘One manner in which a court may test whether fraud or mistake may be characterized as intrinsic or extrinsic, if the party defrauded ‘has received information or facts which should put him on inquiry and the inquiry, if made, would disclose the fraud.’ I don’t find that Mrs. Stevenot was put on inquiry until she in fact had talked to an attorney about this because she believed until that time that in fact there was no rights or no asset that she would have legal rights to.”
Counsel for Richard asked the court whether it found that Pamela had no knowledge of the proceedings. The court replied: “No. No, I didn’t say that she had no knowledge of her rights. She was deceived as to the fact that she had rights and that a legal proceeding would benefit her in any way based on the statement to her by her husband, not that she had no knowledge of the legal proceedings. But, as I say, and I think my first statement is really the most important about this, while this will result in further legal action, I have not ruled on the marital settlement agreement. And the marital settlement agreement may be determinative on your client’s part of all of the rights of the parties. I just find that given the process that has taken place up to now, the marital proceeding is one that I think should be set aside by my equitable powers.”

That summons, in the form prescribed by California Rules of Court, rule 1283, contains the following warning: “To the Respondent: The petitioner has filed a petition concerning your marriage. If you fail to file a response within 30 days of the date that this summons is served on you, your default may be entered and the court may enter a judgment containing injunctive or other orders concerning division of property, spousal support, child custody, child support, attorneys’ fees, costs, and such other relief as may be granted by the court. The garnishment of wages, taking of money or property, or other court authorized proceedings may also result.”

It appears from Pamela’s declaration in support of her motion that she is torn between whether to allege her failure to seek an attorney sooner was due to duress by Richard or because of extrinsic fraud committed by him. Duress is to be distinguished from extrinsic fraud, although, if proven, it is a valid ground to set aside a judgment and marital settlement agreement. Duress, however, is more than mere threats or puffing; a party must be shown to have intentionally used threats or pressure to induce action or nonaction to the other party’s detriment. (See In re Marriage of Gonzalez (1976) 67 Cal.App.3d 736 [129 Cal.Rptr. 566].)
Here, the trial court made no finding of duress or that duress was a basis for the court’s order setting aside the judgment. Since the law permits a spouse dealing at arms’ length to give opinions about the character and value of property favorable to him without warranty or liability, statements between spouses to the effect that “getting a lawyer won’t benefit you,” being even more likely to occur, do not constitute extrinsic fraud. (See Boeseke v. Boeseke, supra, 10 Cal.3d 844.)

In this action the parties acted as thousands of other Californians have done in handling their own dissolution proceeding without consulting an attorney. Divorcing parties, of course, are free to represent themselves, but must be willing to accept the risks that arise by being their own lawyer, without any training or experience. There is an old adage that a lawyer who represents himself has a fool for a client. This adage should provide some indication of the risks that nonlawyers subject themselves to when they attempt to represent themselves.
Today, with the use of Judicial Council forms for family law proceedings which are specifically drafted to allow parties to represent themselves, it would be unfair to parties employing counsel for the law to treat persons deciding to represent themselves in a more favorable way. For this reason, the Stevenots, having decided to represent themselves, are entitled to no better or different treatment than they would receive had they been represented by counsel. Mistake or inadvertance in failing to obtain counsel may be a ground for setting aside a judgment under Code of Civil Procedure section 473, but it is not extrinsic fraud and therefore not a basis for setting aside a final judgment on that ground. There was certainly no allegation by Pamela that any fraud had caused her not to obtain a lawyer at an earlier time and no allegations of any concealed facts which came to her attention which caused her to obtain counsel.