[L.A. No. 30157. In Bank. Mar. 7, 1974.]

BEATRICE M. BOESEKE, Plaintiff and Appellant, v. HELEN L. BOESEKE, as Executrix, etc., et al., Defendants and Appellants.

**COUNSEL**

Paul A. Mason, Enright, Elliott & Betz, Norman Elliott and Michael J. Fitzpatrick for Plaintiff and Appellant.

Hutchinson & Irwin, Paul R. Hutchinson, James A. Irwin and Richard H. Hicks for Defendants and Respondents.

**OPINION**

**CLARK, J.**—In this action to rescind a 1945 property settlement agreement, the trial court concluded that, while decedent Elmer J. Boeseke committed fraud, the action by his former wife, Beatrice, is barred by the statute of limitations. Both sides appeal.

Elmer and Beatrice married in 1925 and a daughter was born the following year. Although each entered marriage with substantial property, they declared bankruptcy in 1935.

Following their separation in 1942 Elmer paid Beatrice $410 monthly for support until October 1945 when they executed the property settlement agreement.[1] Beatrice secured a default divorce the next month, the decree adopting the agreement. Elmer remarried several years later; Beatrice never remarried.

---

[1] In August 1945 Elmer threatened to discontinue payments unless their property rights were settled, but repudiated the threat and continued to make payments.

Negotiation of the property settlement had commenced early in 1945. Following a letter from Beatrice's attorney, Elmer consulted Neil S. McCarthy, a family friend and attorney for some of Elmer's enterprises. McCarthy advised Elmer, Beatrice, and her attorney that his friendship precluded his representing either spouse. Nevertheless, he acted as Elmer's attorney, directing the negotiations.

Elmer furnished a list of numerous properties,[2] the most significant being a ranch in Santa Barbara, producing Texas oil leases, and Wyoming oil properties.[3] The list did not include encumbrances.

Elmer told Beatrice and her attorney he valued the community property at approximately $200,000 and that it was heavily encumbered. In August he stated that, because the Texas oil income had declined to $6,875 monthly—less than its expense and loan payment—he had not made the last $5,000 installment payment to the bank. He did not evaluate the specific properties, nor did he enumerate the debts. Elmer had managed the properties, and Beatrice was familiar with neither the extent nor the value of the oil interests.

McCarthy demanded the agreement contain provision stating neither party made any representation concerning property values and that each relied on his own investigation of the property. Beatrice's attorney, pointing out neither he nor his client had made such investigation, objected to the proposed provision and requested Elmer's $200,000 representation be included in the agreement. Elmer refused, insisting on the "no representation" provision. McCarthy told Beatrice's attorney to obtain their own appraisals, but Elmer would oppose any substantial expenditure. Finally, considering the proposed agreement unfair, Beatrice's attorney recommended she make her own investigation, informing her she could apply to the court for allowance of attorney fees and costs of investigation. However, Beatrice elected not to investigate and instead signed the agreement proposed by Elmer at McCarthy's office.

---

[2] Two residential lots valued at $1,250 were omitted and the value of one oil venture interest was understated while another was overstated. The errors were found to be unintentional and not of sufficient magnitude to materially affect the agreement.

[3] The Santa Barbara ranch had been owned by Elmer prior to marriage but was lost through foreclosure in the 1930's. The purchaser, a friend, agreed to allow the Boesekes to use the property and repurchase it for the sale price plus simple interest. Early in 1945 the purchaser told McCarthy to deliver the deed he was holding to Elmer. Elmer did not record the deed until after execution of the property settlement agreement. Although not entirely clear, there was apparently about $2,000 owed to the purchaser.

The Wyoming leases were acquired a short time before the settlement. Wells had earlier been drilled but abandoned. Elmer did not drill on the property until after the property settlement when large quantities of oil were found. The trial court found the Wyoming leases were not valuable at the time of the agreement.

The agreement provided Beatrice receive household furniture, two automobiles, two residential lots in Santa Barbara, a trust in the principal sum of $70,000 to be created within four years, and $350 a month until completion of the trust. Elmer received the balance of the community property but agreed not to encumber the Santa Barbara ranch and, in the event of its sale, to pay half the proceeds to the trust. He further agreed to pay $5,000 of an $11,000 federal tax lien, the spouses each paying half the excess.[4]

The no-representation provision states: "The parties hereto have acquired certain personal property and equity in certain real property and leases of an indefinite and speculative value; that neither party makes any representations to the other as to the value of the community property or other property or with respect to any property; that each party relies upon his or her own investigation and judgment with respect to all property and all matters herein contained; that this agreement is made and entered into by each of the parties of his and her own volition and that each of the parties has read, or heard read, the whole of this agreement."

Elmer made monthly payments and, after two one-year extensions, paid the balance due the trust from funds borrowed from his second wife.

Elmer died 17 October 1963, leaving a substantial estate, and Beatrice commenced this action on 24 March 1964. Demurrer was sustained without leave to amend, but the ensuing judgment was reversed. (*Boeseke* v. *Boeseke* (1967) 255 Cal.App.2d 848 [63 Cal.Rptr. 651].)

In the subsequent trial the court determined the net value of community property exceeded $300,000; Elmer's gross income in 1945 was $115,707; his net income from the oil properties before depletion and depreciation was $44,076; and he had received additional net income of $7,243. The court concluded that Elmer had failed to disclose the "facts relating to the value, nature, and extent" of the community assets and income, and that this nondisclosure constituted concealment of material fact, breach of fiduciary duty, and fraud.

In conclusion, however, the court determined Beatrice's claim was barred by the statute of limitations. The trial court found that the following facts and circumstances—known to her more than four years prior to the commencement of the action—would place a prudent person on inquiry concerning the value, nature, and extent of the community property: (1) Elmer's refusal to include any representation concerning the community

---

[4]Although there was no provision for payment of other debts, Elmer paid them.

property—and his insistence on inclusion of a clause concerning independent investigation—in the agreement; (2) Beatrice's attorney's advice not to sign the agreement; (3) her income tax return for 1943, which reflected an increase in capital assets of $196,684 due to acquisition of the Texas oil leases; (4) her income tax return for 1944 and 1945, which reflected gross income from those leases of $100,000 and net income before depletion of $50,000; (5) her knowledge the federal government had levied tax liens in excess of $11,000, a portion of which she had agreed to pay; (6) recitation in the agreement that the Wyoming properties were not producing and that five wells had been drilled and abandoned; and (7) her knowledge that on the basis of Elmer's $200,000 estimate, she was receiving less than her share of the property.

We conclude that neither Elmer's verbal representation concerning the value of the community assets nor his subsequent refusal either to warrant the representation or to include it in the written agreement was improper.

It is true Elmer did not disclose all facts in his possession relating to the value, nature, and extent of the community property. However, Beatrice and her counsel were fully advised of the property descriptions. They were also aware that some of the property was of substantial value, that there was substantial income—and substantial debt. As far as can be determined, neither she nor her counsel requested further *facts* relating to the value, the nature, or the extent of the marital assets. And rather than seeking the facts, she chose to accept her husband's offer of settlement even after being advised by counsel that she should investigate. She may not now complain. The trial court's finding of fraud predicated on Elmer's lack of disclosure fails.

By reason of his management and control, one spouse normally has a fiduciary duty to account to the other while negotiating a property settlement agreement. The duty is terminated neither by commencement of an action for dissolution nor by retention of an attorney. (*Vai* v. *Bank of America* (1961) 56 Cal.2d 329, 337 [15 Cal.Rptr. 71, 364 P.2d 247].) It includes disclosure of the existence of community assets and material facts affecting their value. (56 Cal.2d at pp. 342-343.)

We cannot agree with the trial court that the nondisclosure here by the husband constituted either a breach of his fiduciary duty or fraud. The managing spouse must be permitted to protect his own interests and to assume a position adverse to the other, particularly when the latter is represented by counsel. For example, in *Jorgensen* v. *Jorgensen* (1948) 32 Cal.2d 13 [193 P.2d 728], we held it was not necessarily fraudulent

for a husband to assert community property to be his separate property. We stated that, when the husband takes the position certain property is separate, the wife must then investigate the facts. If she and her counsel choose to accept his assertion, she may not collaterally attack the subsequent judgment approving the settlement. (32 Cal.2d at p. 22; see *In re Marriage of Carter* (1971) 19 Cal.App.3d 479, 489-492 [97 Cal.Rptr. 274].)

■ Further, when a spouse, represented by independent counsel, determines to forego a suggested investigation and to accept a proposed settlement, that spouse may not later avoid the agreement unless there has been a misrepresentation or concealment of material facts.[5] Under such circumstances, the spouse proposing the agreement is under no duty to compel the other to investigate, and the accepting spouse's decision, though ill advised, is binding.

■ Finally, during negotiation to settle marital property rights, fairness dictates the managing spouse be under no duty to *evaluate* the marital assets. And if the managing spouse does assert an opinion of value, he or she must be able to do so without warranty. ■ Valuation, like designation of property as being either community or separate, is an issue on which reasonable views often differ, and in the absence of concealment of assets— or facts materially affecting their value—a property settlement agreement may not later be set aside solely on the basis of the managing spouse's inaccurate opinion of value or on his or her refusal to have rendered such opinion.

Because we conclude there was no fraud, we do not reach the statute of limitations issue. Judgment is affirmed.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Burke, J., and Sullivan, J., concurred.

The petition of the plaintiff and appellant for a rehearing was denied May 16, 1974.

---

[5]*Vai* v. *Bank of America, supra,* 56 Cal.2d 329, 340 is distinguishable because the wife did investigate, and while the husband made representations of fact and value relating to their ranch, he failed to disclose he had accepted a deposit on the property for a price greatly in excess of the value suggested by his representations. Although request regarding offers of purchase was not specifically made, the husband's failure to disclose that information constituted a concealment of a material fact concerning the property. In contrast, Beatrice was made aware that the facts relating to value and income were neither fully disclosed nor settled.