[No. B053533. Second Dist., Div. Seven. Oct. 10, 1991.]

ELIZABETH BAUR WORTON, Plaintiff and Appellant, v.
EUGENE W. WORTON et al., Defendants and Respondents.

## COUNSEL

Keesal, Young & Logan, Michael M. Gless, Robert D. Feighner, Morgan, Wenzel & McNicholas and John P. McNicholas for Plaintiff and Appellant.

Antin, Litz & Gilbert, Ronald A. Litz, Michael L. Taylor, Wilson, Elser, Moskowitz, Edelman & Dicker and Martin K. Deniston for Defendants and Respondents.

## OPINION

**LILLIE, P. J.**—Plaintiff appeals from summary judgment entered against her and in favor of defendants.

### FACTS

Plaintiff sued her former husband, Eugene W. Worton, M.D. (Worton), for damages for fraud and conversion, and her former attorney, Robert Newell (Newell), for damages for legal malpractice.[1]

The complaint, filed January 24, 1989, contained four causes of action. The first cause of action (fraud and deceit) alleged: On May 17, 1984, plaintiff filed a petition for dissolution of marriage against defendant Worton. On August 22, 1986, following a trial, judgment of dissolution was entered. The judgment purported to divide equally all community assets of the parties, including the "Defined Benefit Pension Plan" (the plan) of Worton, and included the following provision: "The parties shall create and recognize as to [the plan] the existence of [plaintiff's] right to: [¶] (1) An undivided one-half interest in the total value of accrued benefits of [Worton] plus any accrued and accumulated interest and earnings payable in accordance with the terms of [the plan]. As of September 30, 1985, the estimated distributable benefits payable thereunder were $501,061.27." Worton represented to plaintiff and to the court in the dissolution proceeding that he had

---

[1] Also named as defendants were Eugene W. Worton Professional Corporation and Newell & Chester, a law partnership. For purposes of this appeal we disregard the corporate and partnership defendants.

made a full disclosure of all assets of the marriage, including the plan, and that the benefits payable under the plan were $501,061.27. The representations were false in that there was an additional $162,000 in the plan. Said representations were known by Worton to be false from the time they were made through the time judgment was entered. Worton intended that plaintiff rely on the representations and she did rely on them justifiably and without knowledge of their falsity. Not until September 1988 did plaintiff discover that the benefits of the plan included an additional $162,000 by which the plan was overfunded and that the overfunded amounts were commingled by Worton so that plaintiff could not have discovered them earlier. As a result of plaintiff's reliance on the truth of Worton's representations plaintiff was damaged in the sum of $81,000.

The second cause of action (fraud and deceit—concealment) alleged that Worton, in violation of his fiduciary duty to plaintiff, concealed from her the sum of $162,000 in the benefits of the plan with the intent to defraud her.

The third cause of action (conversion) alleged that Worton is in wrongful possession of $81,000 belonging to plaintiff, refuses to deliver said sum to plaintiff despite repeated demands, and converted said sum to his own use.

The fourth cause of action (legal malpractice) alleged: Plaintiff retained defendant Newell to represent her in the dissolution proceeding. In the course of such representation Newell negligently failed to discover and obtain evidence of the existence of the excess assets of $162,000 as part of the accrued benefits of the plan. As a result of Newell's negligence plaintiff sustained damages of $81,000.

Worton moved for summary judgment in his favor on the ground that the action against him is barred by res judicata. Newell moved for summary judgment in his favor on the ground plaintiff's action for legal malpractice is barred by the statute of limitations contained in Code of Civil Procedure section 340.6.[2]

In support of their motions for summary judgment defendants presented excerpts from the depositions of plaintiff and Newell, as well as Roger Halfhide and Michael Gless, attorneys retained by plaintiff after entry of the judgment of dissolution. The deposition testimony showed: Before commencement of trial in the dissolution proceeding Newell told plaintiff that he knew little about pension plans. He also informed plaintiff that he had not

---

[2]In his answer to the complaint Worton alleged res judicata as an affirmative defense. In his answer Newell pleaded the statute of frauds as an affirmative defense.

arranged for an expert to testify regarding the plan. During trial, in a conversation outside the courtroom, Worton told plaintiff and Newell that he (Worton) made no contributions to the plan following the separation of the parties because the plan was overfunded; Worton did not mention the amount of the overfunding and plaintiff did not know what was meant by overfunding. Worton testified to the same effect, i.e., he made no contributions to the plan in 1984 because it was overfunded. In cross-examining Worton's pension expert, Newell asked about overfunding; the witness said the amount of the overfunding would be returned to Worton but his testimony did not disclose that amount. Although he admittedly was not an expert in pension law, Newell did not contact the actuary for the plan or retain an expert to appraise the plan because "[t]hat was agreed there would be a division in kind. The valuation [became] secondary."

Plaintiff discharged Newell in late August 1986. In October 1986 plaintiff retained Roger Halfhide, an attorney specializing in pension law, to determine whether the judgment of dissolution properly divided the plan benefits in accordance with California community property law. In January 1987 Halfhide learned: Worton made no contributions to the plan after the separation of the parties (June 1, 1984); as of September 30, 1985, the value of Worton's accrued benefits in the plan was $501,000; sometime between September 30, 1985, and September 30, 1986, the plan was terminated and any excess assets therein allocated to Worton; as of September 30, 1986, the fair market value of Worton's accrued benefits in the plan, including excess assets allocated to him, was $672,534.

After he learned that excess assets in the plan had been allocated to Worton, and before July 6, 1987, Halfhide reviewed the judgment to see if it covered the excess assets. He concluded (also before July 6, 1987) that the judgment was silent regarding excess assets and therefore was ambiguous. By May 1987 Halfhide estimated the excess assets to be $122,000 and he so informed Michael Gless, plaintiff's other attorney. Sometime in 1987 Gless told plaintiff that Halfhide believed there were excess assets in the plan which were not reported at the time of trial. On July 6, 1987, Halfhide wrote to plaintiff advising her that on September 30, 1985, Worton's accrued benefits in the plan were $501,000 and the judgment awarded plaintiff a half interest in that sum; however, sometime between September 30, 1985, and September 30, 1986, the plan was terminated and the excess assets distributed to the participants with the result that Worton's accrued benefits increased to about $670,000 as of the latter date. By the end of 1987 Halfhide suspected Newell may have been negligent regarding the plan, but he did not tell plaintiff of his suspicions. Plaintiff testified that before 1988 she had reason to believe the judgment of dissolution did not properly divide the

assets in the plan between her and Worton because Halfhide told her there were excess assets in the plan.

Plaintiff opposed both motions for summary judgment. The motions were granted and summary judgment was entered in favor of defendants. This appeal followed.

## DISCUSSION

### I

### STANDARD OF REVIEW

■ Summary judgment is proper if the supporting papers are sufficient to sustain a judgment in favor of the moving party as a matter of law and the opposing party presents no evidence which gives rise to a triable issue as to any material fact. (Code Civ. Proc., § 437c, subd. (c); *Ramsey* v. *City of Lake Elsinore* (1990) 220 Cal.App.3d 1530, 1536 [270 Cal.Rptr. 198].) In order to prevail on a summary judgment motion the defendant must conclusively negate a necessary element of plaintiff's case or establish a complete defense. (*Horsemen's Benevolent & Protective Assn.* v. *Insurance Co. of North America* (1990) 222 Cal.App.3d 816, 820 [271 Cal.Rptr. 838].) Where the evidence presented by defendant does not support judgment in its favor the motion must be denied without looking at the opposing evidence, if any, submitted by plaintiff. (*Albertini* v. *Schaefer* (1979) 97 Cal.App.3d 822, 831 [159 Cal.Rptr. 98]; *National Exhibition Co.* v. *City and County of San Francisco* (1972) 24 Cal.App.3d 1, 5 [100 Cal.Rptr. 757].)

■ The evidence of the moving party is strictly construed and that of the opposing party liberally construed. (*Coppola* v. *Superior Court* (1989) 211 Cal.App.3d 848, 862 [259 Cal.Rptr. 811].) "But 'where there is no material issue of fact to be tried and the sole question before the trial court is one of law as to whether the claim of the moving party is tenable on the undisputed facts, it is the duty of the trial court on a motion for summary judgment to hear and determine the issue of law.' [Citation.]" (*Rombalski* v. *City of Laguna Beach* (1989) 213 Cal.App.3d 842, 848 [261 Cal.Rptr. 820].)

■ In reviewing a grant of summary judgment, an appellate court must make its own independent determination of the construction and effect of the papers submitted. (*Preis* v. *American Indemnity Co.* (1990) 220 Cal.App.3d 752, 757 [269 Cal.Rptr. 617].) Accordingly, we review the summary judgment granted below without deference to the trial court's determination.

## II

### Summary Judgment in Favor of Worton

■ "The doctrine of res judicata is composed of two parts: claim preclusion and issue preclusion. Claim preclusion prohibits a party from relitigating a previously adjudicated cause of action; thus, a new lawsuit on the same cause of action is entirely barred. [Citation.] Issue preclusion, or collateral estoppel, applies to a subsequent suit between the parties on a different cause of action. Collateral estoppel prevents the parties from relitigating any *issue* which was actually litigated and finally decided in the earlier action. [Citation.] The issue decided in the earlier proceeding must be identical to the one presented in the subsequent action." (*Flynn* v. *Gorton* (1989) 207 Cal.App.3d 1550, 1554 [255 Cal.Rptr. 768]; original italics.) "The most important criterion in determining that two suits concern the same controversy is whether they both arose from the same transactional nucleus of facts. [Citation.] If so, the judgment in the first action is deemed to adjudicate for purposes of the second action every matter which was urged, and every matter which might have been urged, in support of the cause of action or claim in litigation." (*Hulsey* v. *Koehler* (1990) 218 Cal.App.3d 1150, 1157 [267 Cal.Rptr. 523].)

■ In the dissolution proceeding the parties sought adjudication of their respective rights in the accrued benefits of the plan, which included the excess assets. In the causes of action asserted against Worton in the present action, plaintiff seeks recovery of half the excess assets. Both the earlier proceeding and the present action therefore concern the same claim or controversy, i.e., the division of the plan's benefits between the parties. Accordingly, the governing principle is claim preclusion which "prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."[3] (*State Bd. of Equalization* v. *Superior Court* (1985) 39 Cal.3d 633, 641 [217 Cal.Rptr. 238, 703 P.2d 1131]; internal quotation marks omitted.)

It does not follow, however, that res judicata applies to bar plaintiff's causes of action against Worton. ■ "The doctrine of res judicata,

[3] In support of a contrary conclusion plaintiff cites *Henn* v. *Henn* (1980) 26 Cal.3d 323 [161 Cal.Rptr. 502, 605 P.2d 10], wherein the Supreme Court held that the doctrine of res judicata did not bar a former wife's action to obtain a share of the former husband's military pension to the extent it was earned during the marriage because the issue of the pension was not before the court in the dissolution proceeding and therefore was not adjudicated in that proceeding. (*Id.,* at pp. 330-331.) *Henn* is distinguishable from the present case because here the plan was before the court and the judgment of dissolution disposed of it. The excess assets were not a separate item of community property; they were part of the accrued benefits of the plan.

whether applied as a total bar to further litigation or as collateral estoppel, rests upon the sound policy of limiting litigation by preventing a party who has had *one fair adversary hearing* on an issue from again drawing it into controversy and subjecting the other party to further expense in its reexamination." (*Vella* v. *Hudgins* (1977) 20 Cal.3d 251, 257 [142 Cal.Rptr. 414, 572 P.2d 28]; original italics; internal quotation marks omitted.)

■ Plaintiff contends that failure of the dissolution judgment to dispose of the parties' interests in the excess assets was caused by Worton's fraudulent concealment of the existence of the excess assets which prevented plaintiff from fully presenting her case. In considering this contention, "[i]t is necessary to examine the facts in the light of the policy that a party who failed to assemble all his evidence at the trial should not be privileged to relitigate a case, as well as the policy permitting a party to seek relief from a judgment entered in a proceeding in which he was deprived of a fair opportunity fully to present his case. [¶] The latter policy applies where a party's adversary, in violation of a duty arising from a trust or confidential relation, has concealed from him facts essential to the protection of his rights, even though such facts concerned issues involved in the case in which the judgment was entered." (*Jorgensen* v. *Jorgensen* (1948) 32 Cal.2d 13, 19 [193 P.2d 728].)

■ Because of the fiduciary relationship that exists between the spouses regarding the control of community property, each spouse has a duty to inform the other of the existence of community property assets. (*In re Marriage of Modnick* (1983) 33 Cal.3d 897, 905 [191 Cal.Rptr. 629, 663 P.2d 187].) This fiduciary relationship does not terminate upon separation of the spouses or the commencement of a dissolution proceeding and the duty of disclosure therefore continues until the marriage has been dissolved and the community property divided by the court. (*Id.*, at p. 906.)

■ According to Worton's evidence in support of his motion for summary judgment, at the time of trial Worton informed plaintiff and her attorney, Newell, that he had made no contributions to the plan following separation of the parties because the plan was overfunded. Worton produced no facts showing that overfunding is synonymous with excess assets, or that either plaintiff or Newell saw the connection between overfunding and excess assets. On the contrary, plaintiff testified that she did not know what was meant by overfunding. Construing Worton's evidence strictly, as we must, Newell's lack of expertise in pension law indicates that he, too, was unaware of the significance of the overfunding.

Worton's evidence was directed to, and his arguments below were based on, the principle that there is no duty to disclose the *value* of a community

property asset (as distinguished from its existence) where means of ascertaining value are available to the spouse who does not manage or control the asset. (See *In re Marriage of Connolly* (1979) 23 Cal.3d 590, 599-600 [153 Cal.Rptr. 423, 591 P.2d 911]; *Boeseke v. Boeseke* (1974) 10 Cal.3d 844, 849-850 [112 Cal.Rptr. 401, 519 P.2d 161].) That principle does not aid Worton inasmuch as he failed to establish that he informed plaintiff of the existence of the excess assets.

Worton's failure to reveal the existence of the excess assets to plaintiff constituted a violation of his fiduciary duty to account to her for the community property and deprived her of an opportunity fully to present her case in the dissolution proceeding. Accordingly, the instant action against Worton to recover plaintiff's share of the excess assets is not barred by res judicata and summary judgment in favor of Worton was improper.

## III

### Summary Judgment in Favor of Newell

Under Code of Civil Procedure section 340.6, the one-year statute of limitations for legal malpractice begins to run when the client discovers, or through the use of reasonable diligence should have discovered, the facts constituting the attorney's wrongful act or omission. The period is tolled during the time, inter alia, the client has not sustained actual injury.[4] (*Troche v. Daley* (1990) 217 Cal.App.3d 403, 408 [266 Cal.Rptr. 34].)

#### A

#### *Discovery of Wrongful Conduct*

The actual or constructive discovery of an act or omission the client alleges was wrongful commences the limitations period for an action based on that act or omission. (*McCann v. Welden* (1984) 153 Cal.App.3d 814, 819-821 [200 Cal.Rptr. 703].) Newell's alleged wrongful conduct was his failure to discover and obtain evidence of the excess assets as part of the accrued benefits in the plan.

The evidence in support of Newell's motion for summary judgment, which was uncontradicted, showed: Before trial of the dissolution proceeding began Newell told plaintiff that he knew little about pension

---

[4]Code of Civil Procedure section 340.6 provides in pertinent part: "(a) An action against an attorney for a wrongful act or omission, other than for actual fraud, arising in the performance of professional services shall be commenced within one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the facts constituting the wrongful act or omission, or four years from the date of the wrongful act or omission, whichever occurs first. In no event shall the time for commencement of legal action exceed four years except that the period shall be tolled during the time that any of the following exist: [¶] (1) The plaintiff has not sustained actual injury; . . . ."

plans and that he had not retained an expert to testify regarding the plan. During 1987 plaintiff learned that Roger Halfhide believed there were excess assets in the plan which were not disclosed during the trial. In July 1987 plaintiff learned that between September 30, 1985, and September 30, 1986, the plan was terminated and the excess assets distributed to Worton with the result that his accrued benefits were approximately $170,000 more than the accrued benefits in the plan divided by the judgment of dissolution. From the foregoing facts, all of which plaintiff learned before the end of 1987, she knew that the judgment did not divide the excess assets as part of the benefits in the plan. These facts also should have aroused plaintiff's suspicion that the judgment was incomplete in this respect because of Newell's failure to discover and present evidence of the excess assets. At the very least, the facts in her possession were sufficient to charge plaintiff with the duty to make further inquiry regarding the extent of Newell's responsibility for what was, in plaintiff's view, a deficiency in the judgment.

Plaintiff argues Newell did not present evidence that plaintiff discovered his conduct constituted negligence more than one year before January 24, 1989, when the present action was commenced; accordingly, her cause of action for legal malpractice is not barred by the statute of limitations. Under Code of Civil Procedure section 340.6, however, the one-year period is triggered by the client's discovery of "the facts constituting the wrongful act or omission," not by his discovery that such facts constitute professional negligence, i.e., by discovery that a particular legal theory is applicable based on the known facts. "It is irrelevant that the plaintiff is ignorant of his legal remedy or the legal theories underlying his cause of action. Thus, if one has suffered appreciable harm and knows or suspects that professional blundering is its cause, the fact that an attorney has not yet advised him does not postpone commencement of the limitations period." (*Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 898 [218 Cal.Rptr. 313, 705 P.2d 886]; see also (*McGee v. Weinberg* (1979) 97 Cal.App.3d 798, 804 [159 Cal.Rptr. 86].)

More than one year before plaintiff commenced her legal malpractice action she learned facts which linked the judgment's failure to divide the excess assets in the plan to Newell's failure to discover and obtain evidence of the excess assets, the wrongful omission alleged. Accordingly, the action is barred unless plaintiff did not sustain actual injury as a result of that omission until a time within the one-year period.

## B

### Actual Injury

In *Budd v. Nixen* (1971) 6 Cal.3d 195 [98 Cal.Rptr. 849, 491 P.2d 433], our Supreme Court, in discussing the concept of actual injury, ex-

plained: "If the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence. [Citations.] Hence, until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice." (*Id.*, at p. 200, fn. omitted.) However, "[a]ny appreciable and actual harm flowing from the attorney's negligent conduct establishes a cause of action upon which the client may sue. [¶] Indeed, once having discovered his attorney's negligence and having suffered some damage, the client must institute his action within the time prescribed in the statute of limitations or he will be barred from thereafter complaining of his attorney's conduct." (*Id.*, at p. 201.)

A client sustains actual injury when, as a result of the attorney's neligence, a judgment is entered against the client. (*Troche* v. *Daley, supra,* 217 Cal.App.3d 403, 410-411 [dismissal of civil action]; *Goebel* v. *Lauderdale* (1989) 214 Cal.App.3d 1502, 1506-1508 [263 Cal.Rptr. 275] [conviction in criminal action].) ▮ Plaintiff sustained actual injury as a result of Newell's alleged wrongful conduct upon entry of the judgment of dissolution which did not divide the excess assets as part of the accrued benefits in the plan.

Citing *Robinson* v. *McGinn* (1987) 195 Cal.App.3d 66 [240 Cal.Rptr. 423], plaintiff contends the statute of limitations in Code of Civil Procedure section 340.6 is tolled until the actual injury caused by the attorney's wrongful conduct becomes irremediable. Plaintiff argues that the harm she sustained when the judgment was entered has not become irremediable because under Civil Code section 4353 she may file a postjudgment motion or order to show cause in the dissolution proceeding to obtain adjudication of the excess assets omitted by the judgment.[5]

In *Robinson* a former police officer for the City of Inglewood sued his former attorney for legal malpractice alleging that as a result of defendant's negligence plaintiff was denied a disability pension by the city. In reversing summary judgment in defendant's favor based on the statute of limitations, we noted that the harm suffered must be irremediable before the statute begins to run in a legal malpractice suit. We held that plaintiff's injuries did not become irremediable when individual city officials denied his right to a

---

[5]Civil Code section 4353 provides in pertinent part: "In any action for legal separation or dissolution or annulment of a marriage, the court has continuing jurisdiction to award community property or community debts to the parties that has [*sic*] not been previously adjudicated by a judgment therein. A party may file a postjudgment motion or order to show cause in the proceeding in order to obtain adjudication of any community asset or debt omitted or not adjudicated by the judgment. . . ."

disability pension, but only when he exhausted his administrative remedies by appealing the initial denial of the pension and that appeal was decided against him. (*Robinson* v. *McGinn, supra,* 195 Cal.App.3d at pp. 74-77.)

Plaintiff's reliance on *Robinson* is misplaced. The administrative appeal discussed in that case resulted in a final administrative adjudication of plaintiff's right to receive a disability pension. The equivalent final adjudication in the present case occurred upon entry of the judgment of dissolution which determined the parties' respective rights in the accrued benefits of the pension plan. Stated differently, the administrative appeal referred to in *Robinson* is not an appeal in the sense of a postjudgment remedy in a civil action, but is merely the last step in the administrative procedure necessary to secure a final adjudication at the administrative level. By analogy to *Robinson,* plaintiff suffered irremediable injury as a result of Newell's alleged malpractice when the judgment of dissolution was entered.

The availability of an appeal from a judgment in a civil action does not make "remediable" the harm the client sustained upon entry of the judgment for purposes of tolling the statute of limitation for legal malpractice. (*Troche* v. *Daley, supra,* 217 Cal.App.3d at pp. 410-411.) By the same token, the actual injury plaintiff sustained upon entry of the judgment of dissolution is irremediable despite availability of the postjudgment remedy specified in Civil Code section 4353. If plaintiff's argument to the contrary were adopted, the running of the statute of limitations for legal malpractice would be in the power of the client who could cause the statute to be tolled indefinitely by deferring pursuit of the remedy provided by section 4353. We decline to sanction such a result. It is unsupported by either law or logic and in fact thwarts the purpose of the statute of limitations which is "to require 'diligent prosecution of known claims thereby providing necessary finality and predictability in legal affairs, and ensuring that claims will be resolved while the evidence bearing on the issues is reasonably available and fresh.' [Citations.]" (*Kaiser Foundation Hospitals* v. *Workers' Comp. Appeals Bd.* (1985) 39 Cal.3d 57, 62 [216 Cal.Rptr. 115, 702 P.2d 197].) "The theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." (*Gutierrez* v. *Mofid, supra,* 39 Cal.3d 892, 898; internal quotation marks omitted.)

To summarize: Plaintiff sustained actual injury upon entry of the judgment of dissolution on August 22, 1986, which was before she discovered the facts constituting the wrongful omission by Newell alleged to constitute professional negligence. (See *Budd* v. *Nixen, supra,* 6 Cal.3d at p. 201 ["Ordinarily, the client has already suffered damage when he discovers his attorney's negligence . . . ."].) Because such discovery occurred before the end of 1987, plaintiff's action for legal malpractice, filed more than one year later

(Jan. 24, 1989), is barred by the statute of limitations in Code of Civil Procedure section 340.6. Accordingly, summary judgment in favor of Newell was proper.

DISPOSITION

That portion of the judgment in favor of defendant Newell and against plaintiff is affirmed; that portion of the judgment in favor of defendant Worton and against plaintiff is reversed. Plaintiff shall pay Newell's costs on appeal; Worton shall pay plaintiff's costs on appeal and shall bear his own costs on appeal.

Woods (Fred), J., concurred.

**JOHNSON, J.,** Concurring.—I concur wholeheartedly with the ruling and the rationale of that part of the majority's decision which reverses the summary judgment as to respondent Worton. I concur separately, however, to register a concern about the limited reading the majority gives to our earlier decision in *Robinson* v. *McGinn* (1987) 195 Cal.App.3d 66 [240 Cal.Rptr. 423] in the course of affirming the summary judgment as to respondent Newell.

I concur in the Newell judgment because I agree the harm was "irremediable" in the instant case even though appellant conceivably could file a future motion requesting the trial court to modify its award. In my opinion, the mere possibility the plaintiff *might* sometime file an *independent* legal action which *might* serve to mitigate the damages the defendant's malpractice caused does not make the plaintiff's harm "remediable."

I depart from the majority opinion, however, when it implies the rationale of our *Robinson* opinion is limited to *administrative* appeals. True, that case happened to involve a situation where the plaintiff's harm did not become "irremedial" until he lost an administrative appeal of an administrative body's initial determination against him. The rationale of that opinion, however, extends to *judicial* appeals of *judicial* decisions as well. Indeed most of the decisions cited in *Robinson* related to trial court judgments and appeals from those judgments.

Under the *Robinson* rationale a trial court judgment which is adverse to a client because of his attorney's alleged malpractice does not cause "irremedial" harm until any appeal filed in that case likewise has been decided against the client. In *Robinson* we relied in part on *Bowman* v. *Abramson* (E.D.Pa. 1982) 545 F.Supp. 227 which affirmed the dismissal of a *legal* malpractice case because the two *medical* malpractice cases allegedly lost because of the lawyer's malpractice were still pending on appeal. " 'Until the underlying medical malpractice cases are decided adversely to the plaintiff [by the appellate court] the case against his former attorneys is hypothetical

and his damages are speculative.' " (*Robinson* v. *McGinn, supra,* 195 Cal.App.3d 66, 76, quoting *Bowman* v. *Abramson, supra,* 545 F.Supp. 227, 228.) Since the damages remain "speculative" while the underlying action is on appeal, they are neither "irremediable" nor "actual and appreciable."[1] Accordingly, the cause of action is not complete and the statute of limitations on the legal malpractice action does not commence running. (Alternatively, this could be viewed as an application of California's "equitable tolling doctrine." (*Elkins* v. *Derby* (1974) 12 Cal.3d 410 [115 Cal.Rptr. 641, 525 P.2d 81, 71 A.L.R.3d 839]; 3 Witkin, Cal. Procedure (3d ed. 1985) §§ 510-514.) This doctrine *tolls* the statute of limitations as to one form of relief (the legal malpractice action) while a litigant actively pursues relief in another action (an appeal to determine the lawyer's acts were not prejudicial malpractice).

As we pointed out in *Robinson,* to require clients to file legal malpractice actions against their lawyers while appeals are still pending in the underlying action "would further burden our existing overly crowded court calendars with the filing of potentially meritless lawsuits by plaintiffs waiting to learn whether they indeed will be suffering irremediable harm." (*Robinson* v. *McGinn, supra,* 195 Cal.App.3d at p. 77.)

To the extent the majority opinion can be read to start the statute of limitations running in legal malpractice actions while the underlying cases are still on appeal I am compelled to dissent from its reasoning. I have reservations both about the logic and the policy of such a rule. We were on the right track in *Robinson* and should stay there.

Respondents' petition for review by the Supreme Court was denied January 29, 1992.

---

[1] It is possible a client may have an action in small claims court or municipal court for some attorney fees required to mitigate or cure the effects of the lawyer's malpractice. This cause of action may exist irrespective of the outcome of the appeal in the underlying action. Yet this possibility should not start the statute running on the malpractice action itself which requires proof the client was denied a "collectible judgment." (*Campbell* v. *Magana* (1960) 184 Cal.App.2d 751, 754, 761 [8 Cal.Rptr. 32].) If the client prevails on appeal in the underlying case he will not have been denied a "collectible judgment" and his cause of action will fail. So until that appeal is resolved the client has not suffered the sort of "actual and appreciable" (or "irremediable") harm required to complete a legal malpractice cause of action.