The CADLE COMPANY; and
The Cadle Company II,
Inc., Appellants

v.

GASBUSTERS PRODUCTION I
LIMITED PARTNERSHIP; and
FL-Gasbusters, Inc., Appellees

NO. 2015-CA-000323-MR

Court of Appeals of Kentucky.

AUGUST 12, 2016; 10:00 A.M.

Discretionary Review Denied by Supreme
Court February 9, 2017.

BRIEFS FOR APPELLANTS: Trevor W. Wells, Will E. Messer, Lexington, Kentucky

BRIEF FOR APPELLEES: Stephen P. Stoltz, Stefan J. Bing, Lexington, Kentucky

BEFORE: DIXON, NICKELL, AND VANMETER, JUDGES.

## OPINION

VANMETER, JUDGE:

The doctrine of *res judicata* serves to preclude relitigation of claims which have been previously adjudicated. The issue we must decide in this case is whether the Lawrence Circuit Court erred in granting

summary judgment in favor of Gasbusters Production I Limited Partnership and its general partner, FL-Gasbusters, Inc. (hereinafter jointly "Gasbusters"), and against The Cadle Company ("Cadle") as a result of a bankruptcy judgment. We hold that the trial court did not err and therefore affirm its judgment.

## I. Factual and Procedural Background.

In 2002, C. Lester Paul and Margaret S. Paul, individually and on behalf of a number of corporate entities, initiated this action in Lawrence Circuit Court against Gasbusters, which action was designated No. 02-CI-00274. The corporate entities were stated as Delstar Resources, Inc., a Nevada corporation; Delstar Resources, Inc. (KY), an administratively dissolved Kentucky corporation; Bluegrass Drilling Corporation, Inc., a Kentucky corporation; and Delta Gas Corporation, Inc., a Georgia corporation. In addition, The Viking Group, Inc., included in the caption and body of the Complaint, was stated to be a sole proprietorship and assumed name of C. Lester Paul. The Complaint stated six counts:

Count I alleged Gasbusters owed plaintiffs and Bluegrass Drilling certain costs and expenses for labor and services for operating oil and gas wells operated by Gasbusters. The amount claimed due for the years 1996, 1997, and 1998, including interest, was approximately $440,000.

Count II alleged that Gasbusters, the partnership, was incorrectly organized and that the individually named defendants were jointly and severally liable to plaintiffs for the amounts claimed due from Gasbusters.

Count III alleged that plaintiffs and Delstar Resources were the owners of certain oil and gas mineral rights in Lawrence and Martin Counties, which were subject to a 1980 lease to Raymond Burgess.

These rights were claimed to be subject to a sublease to Gasbusters, as to which Gasbusters had failed to pay the contracted royalties. The amount claimed was in excess of $50,000.

Count IV alleged that plaintiffs and Delta were the assignees of a 1980 Production Mortgage on oil and gas wells known as the "Robertson Coal Co. Wells Nos. 1 and 3." The amount claimed due was $180,000. Count IV also alleged plaintiffs and Delta were the assignees of a Mortgage and a Quitclaim and Sublease Agreement dated June 15, 1991, securing payment of a $72,000 mortgage note from Raymond Burgess. Gasbusters was alleged to be liable to pay these amounts.

Count V alleged that C. Lester Paul was the assignee from Appalachian Natural Gas Corp. and Raymond Burgess of all claims and causes of action under another Lawrence Circuit Court action, docket no. 94-CI-00144, *Appalachian Natural Gas Corp. and Raymond Burgess v. William J. M. Polan, Gasbusters, Inc., and Gasbusters Limited Partnership.* The judgment sought under this other action was $350,000.

Count VI alleged that Gasbusters had erroneously received a royalty payment from Dominion Field Services, LLC, for production on well meter No. 824440.

In 2004, the Pauls, as Debtors, filed a Chapter 7 bankruptcy in the Western District of Kentucky. Both Cadle and The Cadle Company, II ("Cadle II") were listed on the Debtors' Petition for Relief as creditors and were participating parties in the Pauls' bankruptcy action. In May 2005, the bankruptcy court approved the Bankruptcy Trustee's sale to Cadle of the Pauls' interests in the Lawrence Circuit Court Civil Action No. 02-CI-00274, the present action. Cadle was then substituted as a party plaintiff in the Lawrence Circuit

Court Action by Order entered in August 2005.[1] The Lawrence Circuit Court action lay dormant while the parties and their counsel shifted their focus to litigating various claims in the federal courts.

In the bankruptcy proceeding, Gasbusters filed a proof of claim. Initially, the Trustee objected on the basis that the claim was unliquidated. Gasbusters then filed an amended proof of claim which liquidated the amounts claimed. The Trustee later withdrew his objection, but Cadle II, which had purchased substantially all of the Pauls' bankruptcy estate, objected. One of Cadle II's objections was that certain expenses and other offset items were to be taken into account to reduce the amount of the claim. In supplemental answers to Gasbusters' Interrogatories, which were filed in September 2008, Cadle II described these offsets, as follows:

INTERROGATORY NO. 5: Do you object to the allowance of Gasbusters' amended proof of claim filed herin. [?][sic] If so, please explain as fully and completely as possible the factual basis for your contention including the proper dollar amount of such claim and how that amount was calculated. Identify all persons with knowledge of such facts and all relevant documents.

RESPONSE: See General Objection. Subject to and without waiving the foregoing objections, Cadle states the following: Yes, Cadle objects to the allowance of Gasbusters' amended proof of claim and believes that the proper dollar amount of that claim should be zero. Cadle does not believe that Gasbusters has any valid claim against the Estate in that Gasbusters' claim is unenforceable against the debtors and property of the debtors under applicable law. More specifically, Cadle contests the underlying premise of Gasbusters' proof of claim and disputes the factual allegation that the Debtors (or their alleged alter egos) misappropriated mineral resources that belonged to Gasbusters and/or failed to compensate Gasbusters for mineral resources that Debtors sold to third parties. Even more specifically, Cadle disputes whether Gasbusters owns the mineral resources upon which it premises its trespass claims in light of its failure to meet the payment-term condition precedent of the settlement agreement purportedly reached in connection with Lawrence Circuit Court Civil Action No. 94-CI-144. Moreover, Cadle takes issue with the merits of Gasbusters' contention that Debtors (or their alleged alter egos) trespassed upon and/or misappropriated any mineral resources allegedly belonging to Gasbusters. To the extent that Mr. Streit's "expert" opinions are even admissible under the Daubert standard, Cadle disputes their validity and reliability for the reasons identified above in Interrogatory No. 3 in addition to various calculation errors (including without limitation, the failure to confine the opinion to the pre-Bankruptcy period, failure to account for periods of time when the natural gas transmission lines were unavailable, use of incorrect dekatherm data) and the other concerns raised in Cadle's Prehearing Brief and Objection, which Cadle incorporates by reference as if fully set out herein. Gasbusters calculations also fail to provide any credit for payments to Gasbusters and/or its

1. We note a good deal of confusion has ensued in this case by the use of Cadle and Cadle II. For example, **Cadle II** filed a Combined Motion to Substitute Parties in response to Gasbusters' motion to dismiss the Pauls and the Paul Family Entities. By Order entered November 7, 2008, the trial court dismissed the Pauls and their various names/corporations as plaintiffs, and stated "Cadle is substituted for all Plaintiffs."

agents, attorneys, affiliates, receivers, and/or C. Lester Paul or any of his related entities in connection with Palm Beach County, Florida Circuit Court Case No. CL 96-9200 AI (Andrew Messing, et al v. Gasbusters Production I, et al).

To the extent that Gasbusters has any claim against the Estate, which Cadle disputes for the above-referenced reasons, the amount of that claim would be eclipsed by one or more of the following offsets for any sums that may be owed to the Debtors or entities affiliated with the Debtors: (a) **offsets for all fees and expenses, including but not limited to those described in Lawrence Circuit Court Civil Action No. 02-CI-00274, related to gas production to which C. Lester Paul, Bluegrass Drilling or any other affiliated Paul entity may be entitled;** (b) a credit back for C. Lester Paul's share in the proceeds from any positive claim amount as a result of his majority ownership share of Gasbusters; (c) **offsets to the extent of the claim(s) against Gasbusters for funds owed to Ray Burgess, his successors and assigns in connection with Gasbusters' original "purchase" of the applicable mineral resources, including without limitation those described in Lawrence Circuit Court Civil Actions No. 94-CI-0144, No. 02-CI-00274, and No. 05-CI-00156;** (d) **offsets for all unpaid mortgages of public record that encumber the source of Gasbusters claim;** (e) an offset for the overriding $1/8^{th}$ royalty interest previously owned by Margaret S. Paul (with equitable title at a minimum now vested in Cadle), and not accounted for in Gasbusters' calculations.

(emphasis added).

By letter dated December 3, 2008, Cadle's counsel provided detail with respect to the claimed offsets:

With regard to the claimed offset (a) ["offsets for all fees and expenses, including but not limited to those described in Lawrence Circuit Court Civil Action No. 02-CI-00274, related to gas production to which C. Lester Paul … may be entitled"], Cadle specifies the following of its Exhibits—in addition to the Operating Agreement itself, which is one of your designated Exhibits—as its supporting documentation: CADLE 8, 9, 18, 19, 24, 26, and 53 (p. 50). Cadle's total claimed offset is for $398,272.62 (calculated by taking the historical lease operating expenses for 1998 and extrapolating them across the 5.667 years covered by Mr. Streit's analysis).

With regard to claimed offset (c) ["offsets to the extent of the claim(s) against Gasbusters for funds owed to Ray Burgess, his successors and assigns in connection with Gasbusters' original "purchase" of the applicable mineral resources, including without limitation those described in Lawrence Circuit Court Civil Actions No. 94-CI-0144, No. 02-CI-00274, and No. 05-CI-00156"], Cadle designates as its supporting documentation the documents it previously produced in discovery at Bates-stamp numbers 005829-07099 in addition to trial exhibit CADLE 23. Cadle's total claimed offset is for $380,000.00—taken from the above-referenced documents.

With regard to claimed offset (d) ["offsets for all unpaid mortgages of public record that encumber the source of Gasbusters's claim], although there are believed to be additional mortgages for which Cadle has not yet been able to obtain supporting documentation, Cadle designates as its supporting documentation its trial Exhibits CADLE 40, 41, and 42 and states that its claimed offset for this single (divided) mortgage inter-

est is for $95,500.00, which appears on the face of the instruments.

Prior to the hearing, Gasbusters moved to exclude evidence concerning the offsets referred to in the interrogatory answer. The bankruptcy court denied this motion twice. The bankruptcy court held its hearing on December 8, 2008, and issued its decision approximately six months later.

The bankruptcy court first noted that its decision in the dispute between Gasbusters and Cadle II was a "CORE PROCEEDING," pursuant to 28 U.S.C. § 157(b)(2)(B) and (O), and was made "following a trial upon the merits of [Cadle II's] objection" to Gasbusters' amended proof of claim. *In re Paul*, No. 04–30667, 2009 WL 2929563 at *1 (Bankr.W.D.Ky., May 28, 2009). The court rejected Cadle II's offsets claim, finding "that Cadle [II] has failed to provide any credible evidence concerning the existence and, more importantly, the amount of such 'offsets.'" *Id.* at *11. Cadle II then appealed the decision to the federal district court and the Sixth Circuit Court of Appeals, both of which affirmed the bankruptcy court's decision. *Cadle Co. II, Inc. v. Gasbusters Prod. I Ltd. P'ship*, Civ. Action No. 3:09–CV–539–H, 2010 WL 59256 (W.D.Ky., Jan. 6, 2010), *aff'd* 441 Fed.Appx. 310 (6th Cir.2011).

Following federal court finality, the dispute shifted back to Lawrence Circuit Court. The trial court first dismissed all of the Gasbusters limited partners from the lawsuit.[2] Next, Gasbusters filed its motion for summary judgment on the basis that the federal court's bankruptcy adjudication constituted *res judicata*. Cadle argued *res judicata* did not apply. The trial court granted Gasbusters' motion. This appeal followed.

## II. Standard of Review.

As we review the propriety of the trial court's grant of summary judgment, we are mindful that summary judgment was appropriate only if the Gasbusters showed that Cadle "could not prevail under any circumstances." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991) (citing *Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255 (Ky.1985)). In ruling on a motion for summary judgment, we must view the evidence in the light most favorable to the non-movant. *Id.* An appellate court reviewing a grant of summary judgment must determine whether the trial court correctly found that there were no genuine issues of material fact. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky.App.1996). As findings of fact are not at issue, the trial court's decision is entitled to no deference. *Id.*

## III. Issue Presented on Appeal.

In this appeal, Cadle argues that 1) *res judicata*, specifically claim preclusion, does not apply because identity of parties does not exist and identity of causes of action do not exist, and 2) United States Supreme Court precedent calls into question a bankruptcy court's jurisdiction to adjudicate certain state law claims. We discuss these arguments in turn.

### A. *Res Judicata.*

The rule of res judicata is an affirmative defense which operates to bar repetitious suits involving the same cause of action. The doctrine of res judicata is formed by two subparts: 1) claim preclusion and 2) issue preclusion. Claim preclusion bars a party from re-litigating a previously adjudicated cause of

---

**2.** Cadle initially appealed this Order, as to which the trial court appended finality language, CR 54.02(1), but it subsequently moved for, and obtained, dismissal of the appeal. *Cadle Co. v. Crisp*, 2013-CA-001450-MR (Ky. App., Apr. 10, 2014).

action and entirely bars a new lawsuit on the same cause of action. *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980); *Worton v. Worton,* 234 Cal.App.3d 1638, 286 Cal.Rptr. 410 (2 Dist.1991), *rev. denied* (Cal) 1992 LEXIS 472; *County of Rutherford by Child Support Enforcement Agency v. Whitener,* 100 N.C.App. 70, 394 S.E.2d 263 (1990); Vestal, *The Constitution and Preclusion—Res Judicata,* 62 Mich. L.Rev. 33. Issue preclusion bars the parties from relitigating any issue actually litigated and finally decided in an earlier action. The issues in the former and latter actions must be identical. The key inquiry in deciding whether the lawsuits concern the same controversy is whether they both arise from the same transactional nucleus of facts. If the two suits concern the same controversy, then the previous suit is deemed to have adjudicated every matter which was or could have been brought in support of the cause of action. *Worton,* 234 Cal.App.3d at 1638, 286 Cal.Rptr. 410; *Commonwealth, Dept. of Transp. v. Crawford,* 121 Pa.Cmwlth. 613, 550 A.2d 1053 (1988).

For claim preclusion to bar further litigation, certain elements must be present. First, there must be identity of the parties. *Newman v. Newman,* Ky., 451 S.W.2d 417, 419 (1970). Second, there must be identity of the causes of action. *Id.* Third, the action must have been resolved on the merits. *Id.* The rule that issues which have been once litigated cannot be the subject matter of a later action is not only salutary, but necessary to the speedy and efficient administration of justice.

. . .

For issue preclusion to operate as a bar to further litigation, certain elements must be found to be present. First, the issue in the second case must be the same as the issue in the first case. *Restatement (Second) of Judgments* § 27 (1982). Second, the issue must have been actually litigated. *Id.* Third, even if an issue was actually litigated in a prior action, issue preclusion will not bar subsequent litigation unless the issue was actually decided in that action. *Id.* Fourth, for issue preclusion to operate as a bar, the decision on the issue in the prior action must have been necessary to the court's judgment. *Id.*

*Yeoman v. Commonwealth, Health Policy Bd.,* 983 S.W.2d 459, 464–65 (Ky.1998)

■ Cadle asserts that no identity of parties exists because, although both it and Cadle II were named as creditors in the Pauls' bankruptcy, Cadle and Cadle II are separate corporations, Cadle asserted no claim in the bankruptcy proceeding, and Cadle II was the entity that contested Gasbusters' proof of claim. We disagree.

■ Creditors of the debtors are parties to a bankruptcy proceeding. *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.,* 973 F.2d 474, 481 (6th Cir.1992). Similarly, "[p]rivity [within the meaning of *res judicata*] means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented." *Id.* (citing *Latham v. Wells Fargo Bank, N.A.,* 896 F.2d 979 (5th Cir.1990)). While it may be that the two Cadles are legally separate corporations, they both were parties in the bankruptcy and both stand in privity with the Pauls and the Pauls' Bankruptcy Trustee. No question exists but that the first aspect of *res judicata,* identity of parties or their privies, is met in this instance.

■ As to identity of causes of action, Cadle argues that the objection to Gasbusters' proof of claim was not, in and of

itself, a claim equivalent to the Lawrence Circuit Court claims. Again, we disagree.

■ Peeling away the transfer of the various assets and claims of the Pauls, if Cadle and Cadle II had not intervened in this proceeding, it is clear that the effect of the Pauls' bankruptcy filing would have been to subject all the Pauls' assets and claims against Gasbusters to the jurisdiction of the bankruptcy court, including those involving the Pauls' Lawrence County oil and gas interests. In *Yeoman*, the court held that Kentucky has adopted the "transactional" approach, which focuses on whether the lawsuits "arise from the same nucleus of facts." 983 S.W.2d at 465. The fact that different claims of relief are sought in the different actions does not render claim preclusion inapplicable. *See Yeiser v. GMAC Mortg. Corp.*, 535 F.Supp.2d 413 (S.D.N.Y.2008) (prior state court foreclosure action served to bar federal court action based on, among other claims, Real Estate Settlement Procedures Act); *Young v. McDaniel*, 664 F.Supp. 263, 265 (W.D.Ky.1986)(*res judicata* applied notwithstanding that state court action sought injunctive relief and federal court action sought money damages). Specifically, the record confirms that the Pauls' claims arising from the Lawrence County litigation were used, or attempted to be used, as an offset to defeat Gasbusters' bankruptcy claim.

*Res judicata, i.e.,* claim preclusion, serves to bar Cadle's claims in the Lawrence Circuit Court. The Lawrence Circuit Court did not err in so holding.

### B. Bankruptcy Court Jurisdiction to Decide Offset Claims.

■ Finally, Cadle argues that the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011), dictates that the bankruptcy court lacked constitutional authori-

ty to resolve certain state law claims, specifically, as applies to this case, the Pauls' claims against Gasbusters. Cadle quotes the following statement, "Congress may not bypass Article III simply because a proceeding may have some bearing on a bankruptcy case; the question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.*, 564 U.S. at 499, 131 S.Ct. at 2618.

Since the Supreme Court's decision, however, most courts have interpreted its holding narrowly. For example, in a recent case, the Bankruptcy Court for the Eastern District of Kentucky stated:

> *Stern* involved a state-law counterclaim brought to augment the estate; this case involves a request under the Bankruptcy Code to define the estate. Since Stern was decided, the Sixth Circuit has continued to treat *in rem* disputes over the extent of debtors' estates as within bankruptcy courts' authority. *See, e.g., Lawrence v. Ky. Transp. Cabinet (In re Shelbyville Road Shoppes, LLC)*, 775 F.3d 789 (6th Cir.2015) (affirming a bankruptcy court's property-of-the-estate determination in a turnover action); *Underhill v. Huntington Nat'l Bank (In re Underhill)*, 579 Fed.Appx. 480 (6th Cir.2014) (reversing a bankruptcy court's property-of-the-estate determination on the merits).

*Schlarman v. Nageleisen (In re Nageleisen)*, 527 B.R. 258, 261 (Bankr.E.D.Ky. 2015). Further, the Sixth Circuit Court of Appeals stated that "[w]hen a debtor pleads an action under federal bankruptcy law and seeks disallowance of a creditor's proof of claim against the estate—as in *Katchen [v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966)]—the bankruptcy court's authority is at its constitutional maximum." *Waldman v. Stone*, 698 F.3d

910, 919 (6th Cir.2012) (citing *Stern*, 131 S.Ct. at 2617–18).

In this instance, Cadle and Cadle II[3] objected to Gasbusters' proof of claim, relying on offsets arising out of the Lawrence Circuit Court. The Bankruptcy Court in the Western District of Kentucky designated the matter a core proceeding under the Bankruptcy Code, and ultimately held against Cadle, which, again, derived its claim through the Pauls and their Bankruptcy Trustee. We conclude that the Bankruptcy Court had constitutional jurisdiction to adjudicate the claim, and that the resolution of the offset issue by the Bankruptcy Court and subsequently affirmed by the federal courts is conclusive of the claims herein.

The Lawrence Circuit Court's summary judgment is affirmed.

ALL CONCUR.

---

**3.** As noted, *supra,* since both Cadle and Cadle II are in privity with and derive their claims from the Pauls or the Pauls' Bankruptcy Trustee, which Cadle entity objected to Gasbusters' proof of claim is immaterial.