RENDERED:  MAY 8, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0611-MR

REUBEN GENTRY                                                    APPELLANT

v.
APPEAL FROM FAYETTE CIRCUIT COURT
HONORABLE JULIE M. GOODMAN, JUDGE
ACTION NO. 25-CI-00153

TRACY'S RESIDENTIAL RE-ENTRY
CENTER, INC.                                                     APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, McNEILL, AND MOYNAHAN, JUDGES.

MOYNAHAN, JUDGE:  Appellant Reuben Gentry ("Gentry") appeals the Fayette

Circuit Court's Order dismissing his claims against Appellee, Tracy's Residential

Re-entry Center, Inc. ("Tracy's").  Finding that the legal doctrine of claim

preclusion[1] applies, we affirm.

---

[1] Claim preclusion is a doctrine that prohibits relitigating claims that were or could have been litigated between the same parties in a prior action.  *See Miller v. Admin. Off. of Cts.*, 361 S.W.3d 867, 871 (Ky. 2011).  Although often used synonymously with *res judicata,* that doctrine is broader as it refers to both claim preclusion and issue preclusion – two distinct concepts.  *Id.*

# BACKGROUND

In this case, Gentry filed a complaint alleging breach of contract related to a failure to pay rent and for waste (*i.e.*, damages to the real property) allegedly caused by Tracy's. Tracy's filed a Motion to Dismiss arguing that Gentry's lawsuit was barred because a previously litigated lawsuit[2] (the "Shields/Lee action" or "the original lawsuit") between Chiquita Shields and Doyle Lee had settled the exact claims asserted here against Tracy's. Ultimately, the circuit court granted Tracy's requested dismissal, relying on claim preclusion reasoning, though not including a written order to that effect.

## *The Contract/Lease*

Because Tracy's failed to file a brief, we primarily rely on the facts as relayed in Gentry's brief supplemented by the record below. The claims in the original lawsuit and the underlying action on appeal all center on a contract/lease between Gentry, as landlord, and Shields and Lee, as individuals connected to Tracy's, who functioned in a tenant capacity. More specifically, on May 17, 2023, Gentry contracted[3] with Mr. Doyle Lee, or Tracy's, to rent with an option to purchase property located at 3636 Bold Bidder Drive, Units A and B, Lexington,

---

[2] *Shields, et al. v. Gentry*, 23-CI-2807, Fayette Circuit Court, Div. IV.

[3] That contract was attached as Appendix A. The first page (page 1 of 13) of the contract listed the landlord names as "REUBEN GENTRY OR TRACY GENTRY" and the tenant name(s) as "DOYLE LEE OR TRACY'S HOUSE[.]"

KY 40517 (hereinafter, "the property"). Page seven of the contract contained a signature section which was signed by Gentry, as landlord, and on the lines for tenant signatures, the contract was signed by Shields and Lee, respectively. The contract contained an "OPTION TO PURCHASE ADDENDUM" that included an option for "Tenant" to purchase the property for the price of $325,000.00. Further, to exercise that option the Tenant was required to pay a $10,000 deposit that would be credited towards the total purchase price.

Under paragraph fourteen (14) of the Addendum, the contract contained terms related to "EXCLUSIVITY OF OPTION[,]" providing that:

> This Addendum is exclusive, non-transferrable and non-assignable. The powers contained in this Addendum shall exist exclusively for the Tenant and shall not be conveyed, transferred, or delegated to any such third (3rd) party. In the event of death of the Tenant, this Addendum shall be considered null and void with no rights for any heirs of the Tenant's estate.

At the end of the addendum, there was another section for signatures. Again, this was signed by Reuben Gentry as landlord, and two of the lines for tenant's signatures were signed by Chiquita Shields, who also specified on the line below her signature that her name was "Tracy's House RRC, Chiquita Shields," and Doyle Lee.

After the signatures at the end of the Addendum, there was a page with several headers styled "Addendum" and "Lease Option Purchase" that

covered remodeling or structural improvements, as well as mechanics liens. This page was signed by Reuben Gentry as landlord. On two different locations with blanks for 'Tenant Name,' this additional page was first signed by "Chiquita Shields/Tracy's House" and in the line directly underneath this entry is listed "Chiquita Shields" again next to a space for "Tenant Name." Further, Lee signed the form in an area designated for "Tenant Name."

*The Dispute: First Lawsuit*

Gentry contends that Tracy's entered the contract/lease with the intention to occupy the property and facilitate the rental of multiple units as a sober-living halfway house for persons in recovery. Gentry further asserts that Shields signed on behalf of Tracy's, and not in her capacity as an individual. After an initial disagreement, Lee and Shields filed a lawsuit on August 31, 2023 (further amended on February 5, 2024), demanding the return of $12,200 ($10,000 in earnest money and $2,200 in rent). In response, Gentry filed an Answer that included counterclaims against Shields and Lee alleging unreasonable damage to the property. Gentry also claims on appeal that rent has not been paid since the filing of the first lawsuit and that possession was never returned to him.

*The Mediation Agreement*

On March 13, 2024, the three parties (Gentry, Shields, and Lee) entered into a Mediation Agreement. The agreement set out terms in which the

3636 Bold Bidder Drive property would be purchased by Shields and Lee for $315,000, with the cost of substantial and material repairs to the property deducted from the purchase price paid to Gentry. Notably, while disputed rent payments were not explicitly mentioned, paragraph (5) of the agreement provided a mutual release for "all claims of any kind, known and unknown, which claims were raised or could have been raised in the Civil Action and which arise out of issues raised in the Civil Action."[4] Additionally, paragraph ten (10) of the Agreement provided, "Upon execution of final settlement and mutual release documents and payment of the Settlement Amount, counsel will enter an agreed order of dismissal, with prejudice." In an Order entered September 24, 2024, the Circuit Court granted the Plaintiff's motion to enforce the Agreement. In that Order, the Court found the "Mediation Agreement attached as EXHIBIT A to Plaintiffs' Motion to Enforce Settlement Agreement [as] binding and enforceable between the parties." Finally, on April 18, 2025, by an Agreed Order in the Shields/Lee case, the court "resolved all pending legal issues in this proceeding by final and appealable order dated April 8, 2025." Counsel for both Gentry and Shields/Lee signed the order.

---

[4] We observe that in Gentry's initial answer to the first lawsuit which resulted in this Agreement, he made a claim for "Rent in Default from July 1, 2023, to May 31, 2026, for a total of 1065 days at $72.30 per day for a Total of $76,999.50." Thus, the unpaid rent claim now raised again by Gentry in his second lawsuit was known by all parties prior to the March 2024 Mediation Agreement being finalized.

*Identity of the Parties*

Gentry's brief with our Court expressly concedes that Shields signed the original purchase contract *on behalf of* Tracy's. Gentry's complaint in the second action also implicitly recognizes that Shields (or, plausibly, Lee) signed the Lease Option on behalf of Tracy's. In paragraph four (4), the complaint asserts that Tracy's entered two contracts with Gentry dated May 17, 2023, for the purposes of renting the property and having an Option to purchase the same property. While he does not mention Shields or Lee by name, this paragraph implies that Shields and/or Lee signed the Lease Option on behalf of Tracy's.

*Further Litigation*

On November 9, 2024, Gentry filed a Motion to add Tracy's as an Indispensable Party on the theory that Tracy's was a signatory on the contract, but not a party to the Shields/Lee action against Gentry. The circuit court denied Gentry's Motion to add Tracy's to the Shields/Lee action because it had been settled but also noted that Gentry could file a separate action against Tracy's. Specifically, paragraph five (5) of that Order, entered December 23, 2024,[5] stated that, "Defendant may file separate litigation against third-parties referenced in

---

[5] Gentry's brief claimed the Order Denying was dated December 23, 2025, but a review of the record shows this is a typographical error, and the Order was actually entered on December 23, 2024.

Defendant's Motion to Add Indispensable Parties, and all rights available to all parties are preserved."

*Tracy's Motion to Dismiss the Second Lawsuit*

After Gentry filed his Complaint against Tracy's on January 15, 2025, Tracy's filed a Motion to Dismiss on February 17, 2025. Tracy's main argument for dismissal was that Gentry had previously settled – in the first suit against Shields/Lee – the exact same claim he now asserted in the second suit. Tracy's specifically asserted that the claims in the second action were barred by claim preclusion. After the mediation, the trial court in the original Shields/Lee action found the resulting Mediation Agreement was enforceable in Orders entered September 24, 2024, and December 23, 2024.

*The Order Dismissing the 2nd Action Based on Claim Preclusion*

Eventually, in the original Shields/Lee action, the Circuit Court entered an Order on April 8, 2025, determining the factual amount of the offsets from the Mediation Agreement and ordering a closing for the sale of the property. The court then held a hearing on Tracy's Motion to Dismiss the second action on April 11, 2025. During the hearing, the Court ruled that the counterclaim for unpaid rent was raised in the original Shields/Lee action that settled at mediation, so it was not possible to raise in the second action against Tracy's. Further, the

Court ruled that since the Shields/Lee action was already settled, Tracy's could not be added to that suit, and thus any related claims for unpaid rent were waived.

The court did acknowledge on the record that "a mistake was made" in its Order dated December 23, 2024, where it was noted that Gentry was allowed to file a separate action against Tracy's. The court apparently had not realized the claim for rent arrears was made in Gentry's initial Answer in the first suit. Now, on appeal, Gentry asserts that the sole issue is whether the second lawsuit against Tracy's for unpaid rent was properly dismissed due to the settlement of the original Shields/Lee action – despite Tracy's not being a named party to the original action.

## STANDARD OF REVIEW

Where an appellee fails to file a brief, the Appellate Court may:

> "(a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case." Kentucky Rules of Appellate Procedure ("RAP") 31(H)(3).

*Commonwealth v. Blackford*, 674 S.W.3d 465, 467 (Ky. App. 2023). We reach the merits of this appeal through the exercise of RAP 31(H)(3)(a).

*Motions to Dismiss*

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or

-8-

third-party claim shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (f) failure to state a claim upon which relief can be granted . . . .

CR 12.02. The standard of review for a motion to dismiss provides:

"It is well settled in this jurisdiction when considering a motion to dismiss under [Kentucky Rules of Civil Procedure (CR) 12.02], that the pleadings should be liberally construed in a light most favorable to the plaintiff and all allegations taken in the complaint to be true." "Since a motion to dismiss for failure to state a claim upon which relief may be granted is a pure question of law, a reviewing court owes no deference to a trial court's determination; instead, an appellate court reviews the issue *de novo.*"

*Littleton v. Plybon*, 395 S.W.3d 505, 507 (Ky. App. 2012) (citations omitted).

"The court should not grant the motion [to dismiss] unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Netherwood v. Fifth Third Bank, Inc.*, 514 S.W.3d 558, 563 (Ky. App. 2017) (citation omitted).

## ANALYSIS

Upon review of the hearing held in this action on April 11, 2025, we are persuaded that the basis of the trial court's Order of Dismissal was claim preclusion, despite the Order's lack of an express statement to that effect. Consequently, we will not address the alternative dismissal arguments raised by Tracy's at the trial level, including the arguments based on contract interpretation

-9-

and public policy related to violations issued by Fayette County Code Enforcement authorities. Nor will we address collateral estoppel or issue preclusion arguments made by Gentry, as those are inapplicable to the circuit court's result. However, since claim preclusion was argued by Tracy's and considered by the trial court at the April 11, 2025, hearing, we will reach the merits of that issue.

*Res Judicata & Claim Preclusion*

Res Judicata is a defense which bars:

> repetitious suits involving the same cause of action. The doctrine of res judicata is formed by two subparts: 1) claim preclusion and 2) issue preclusion. Claim preclusion bars a party from re-litigating a previously adjudicated cause of action and entirely bars a new lawsuit on the same cause of action. . . . The key inquiry in deciding whether the lawsuits concern the same controversy is whether they both arise from the same transactional nucleus of facts. If the two suits concern the same controversy, then the previous suit is deemed to have adjudicated every matter which was or could have been brought in support of the cause of action.

*Yeoman v. Commonwealth, Health Policy Bd.*, 983 S.W.2d 459, 464–65 (Ky. 1998) (citations omitted). Specifically, Tracy's moved to dismiss the second action based on claim preclusion. Three elements are necessary for claim preclusion: (1) identity of parties, (2) identity of causes of action, and (3) resolution of the action on the merits. *Id.* at 465.

We find persuasive the arguments Tracy's raised to the trial court in its Motion to Dismiss based on claim preclusion. First, the element requiring

identity of the parties is analyzed using caselaw. Kentucky operates under the rule that "only parties to the former action, and their privies" may plead claim preclusion. *Sedley v. City of West Buechel*, 461 S.W.2d 556, 559 (Ky. 1970) (citing *Newman v. Newman*, 451 S.W.2d 417 (Ky. 1970)). In other words, the doctrine applies to named parties and those in privity with the parties of the previous action. *See Estate of Reeder v. Ashland Police Department*, 588 S.W.3d 160, 164 (Ky. App. 2019). The notion that a person who was not a party to a suit may still be bound by its judgment is not just an application of claim preclusion, but:

> is based upon privity between a party to the original suit and the person who should be bound by the judgment. This privity is in turn founded upon such an identity of interest that the party to the judgment represented the same legal right. The rule is essentially one of justice and fairness . . . . *State Farm Mut. Auto. Ins. Co. v. Shelton*, 368 S.W.2d 734, 737 (Ky. 1963).

*Harris v. Jackson*, 192 S.W.3d 297, 303 (Ky. 2006), *as modified* (May 24, 2006).

Further, "[w]hile the concept of privity defies a precise, inflexible definition, a key consideration for its existence is the sharing of the same legal right by the parties allegedly in privity." *BTC Leasing, Inc. v. Martin*, 685 S.W.2d 191, 198 (Ky. App. 1984). "This is to ensure that the interests of the party against whom res judicata has been asserted have been adequately represented by his purported privy at the initial trial of the cause of action." *Id.* Defined more

-11-

recently by our court, "[p]rivity [within the meaning of *res judicata*] means a successor in interest to the party, one who controlled the earlier action, or one whose interests were adequately represented." *Cadle Company v. Gasbusters Production I Limited Partnership*, 509 S.W.3d 713, 719 (Ky. App. 2016) (internal quotation marks omitted).[6]

Here, the record reflects that Shields served as a corporate officer (president) for Tracy's. Moreover, by Shield's action in signing the contract as "Tracy's House RRC, Chiquita Shields," she was at least representing herself to be an agent of Tracy's. Persuasive precedent in analogous situations has found privity for the purposes of *res judicata*. *See Wright v. Heller*, 102 N.E.3d 1285, 1292 (Ohio Ct. App. 2018) ("[I]t is well-settled law that a principal-agent relationship satisfies the privity requirement of res judicata where the claims alleged are within the scope of the agency relationship. *ABS Industries, Inc. v. Fifth Third Bank*, 333 Fed. App'x 994, 999 (6th Cir. 2009)"); *Fogelson v. Wallace*, 406 P.3d 1012, 1021 (N.M. Ct. App. 2017) ("Although a parent-subsidiary relationship does not of itself establish privity, the Restatement (Second) of Judgments recognizes that claim preclusion is appropriate if members of an ownership group directly control a corporate entity." (citations omitted)). Thus, based on the totality of

---

[6] In *Cadle*, our Court recognized that two "legally separate corporations" stood in privity with one another because they were both creditors in the same bankruptcy action, thereby satisfying the "identity of parties" element of claim preclusion. *Id*.

circumstances, there is sufficient identity between Tracy's and Shields/Lee with respect to interests in the Lease Option contract that they are in privity for purposes of *res judicata*.

On the second element, we conclude that the initial action and the current lawsuit involve the same controversy (*i.e.*, the litigation of Gentry's claims related to the Lease Option and the Property). We agree with Tracy's arguments to the circuit court that the "[r]esolution of the [Shields/Lee] Civil Action (by settlement) implicated all actions brought and that could have been brought under the [Shields/Lee] Civil Action, including the causes of action advanced by Gentry."

Finally, we are also persuaded that the Shields/Lee action was resolved on the merits, thereby establishing the third claim preclusion element. As noted above, the initial lawsuit was resolved by the Mediation Agreement and the trial court's Order,[7] entered April 8, 2025, which made findings related to "substantial and material" repairs contemplated by the Agreement after a bench trial for that issue on February 25, 2025. A settlement agreement dismissing a case with prejudice is sufficient to apply claim preclusion. *See 3D Enterprises Contracting Corp. v. Louisville and Jefferson Cnty. Metropolitan Sewer Dist.*, 174

---

[7] The trial court held a bench trial on February 25, 2025, related to fact findings for the amount of offsets from the purchase price related to "substantial and material repairs" contemplated in paragraph three (3) of the Mediation Agreement, but issued its related Order on April 8, 2025.

S.W.3d 440, 448 (Ky. 2005) (settling a case rather than trying it does not subsequently abrogate the claim preclusion doctrine). Paragraph five (5) of the Mediation Agreement mutually released all claims of any kind, known and unknown, and paragraph ten (10) expressly found that the mutual dismissal would be with prejudice. Thus, viewed as a whole, the record establishes that the Shields/Lee action was dismissed with prejudice, thereby satisfying the "adjudication on the merits" element of claim preclusion.

## CONCLUSION

Having reviewed the record in this case, and finding no error, we Affirm the trial court's Order of Dismissal.

ALL CONCUR.

BRIEF FOR APPELLANT:                    NO BRIEF FOR APPELLEE.

Kevin Palley
Lexington, Kentucky